Affirmed and Opinion filed _____________, 2003


















Affirmed and Opinion
filed March 16, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00052-CV

____________

 

THE STATE OF TEXAS and TEXAS
DEPARTMENT OF TRANSPORTATION, Appellants

 

V.

 

GEORGE M. DELANY
and PATRICIA ANN DELANY,

Appellees

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause
No. 00CV0008




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



O P I N I
O N

            The State of Texas and the Texas Department of Transportation
(collectively “the State”) appeal from the trial court’s award of $497,637.80,
including costs, to appellees George and Patricia Delany.  Appellees had originally brought an inverse
condemnation action arising from the State’s removal of the highway (the
“Connector Road”) connecting the northbound frontage road of Interstate 45 to
Johnny Palmer Road.  The State filed a
plea to the jurisdiction, which was denied by the trial court.  On interlocutory appeal, the First Court of
Appeals affirmed and remanded the case for trial on the merits.[1]  After making a preliminary finding that there
had been a material and substantial impairment of access, the trial court
conducted a bench trial on the issue of damages.[2]  This appeal followed.

            The State presents four issues for
review.  It contends: (1) appellees’
inverse condemnation claim is not ripe for review; (2) appellees failed to
prove an unconstitutional taking of access to their property as a matter of
law; (3) the trial court committed reversible error in refusing to permit the
State to make an offer of proof; and (4) the trial court abused its discretion
in awarding sanctions against the State. 
We affirm.

Ripeness

            In one issue, the State argues
appellees’ inverse condemnation claim is not ripe for review.  Appellees counter by arguing the
law-of-the-case doctrine bars the State from relitigating the ripeness issue
because the First Court of Appeals has already ruled on this claim in a prior
appeal.  We agree with appellees’
contention.

            The Supreme Court of Texas recently
defined the law-of-the-case doctrine as “that principle under which questions
of law decided on appeal to a court of last resort will govern the case
throughout its subsequent steps.”[3]  The State argues this doctrine is
inapplicable because a court of last resort, namely the Supreme Court, has not
decided this issue.[4]  But this contention does not recognize the
long line of cases where this Court has applied the doctrine to issues it has
previously decided.[5]  This Court has also applied the doctrine to
issues previously decided by the First Court of Appeals.[6]

            The law-of-the-case doctrine
therefore bars relitigation of the State’s ripeness claim unless either: (1) the
earlier holding is clearly erroneous or (2) the later stage of litigation
presents different parties, different issues or more fully developed facts.[7]  The State urges us to find that our sister
court’s earlier holding in this case is clearly erroneous, yet it advances
identical arguments and citations in support of its claim as before.  We hold the law-of-the-case doctrine bars
relitigation of the State’s ripeness claim and overrule its first issue.

Unconstitutional Taking

            In its second issue, the State
argues the trial court erred in holding that an unconstitutional taking
occurred when the State removed the Connector
 Road abutting appellees’ property.  While the State raises several claims in
connection with this issue, we find none requires reversal.

            The State first claims that
redesigning exit ramps within its existing right-of-way is not an
unconstitutional taking as a matter of law. 
However, it is well settled that a direct physical invasion of property
is not required under Article I, Section 17 of the Texas Constitution to
entitle a landowner to compensatory damages.[8]  One who owns property abutting a highway possesses
an easement of access to and from the existing highway in addition to those
rights held in common with the general public.[9]  This easement of access is a constitutionally-protected
property right, and a landowner is entitled to compensation if a material and
substantial impairment of access has been established.[10]  This would include compensation for
diminution in value of the property resulting from the loss of access.[11]  Therefore, it is well settled that an
abutting landowner may be entitled to compensation when the State alters the
use of its existing right-of-way, provided that a material and substantial
impairment of access has been established.

            Second, the State claims the trial
court erred in concluding appellees had a vested easement of access to the Connector Road
.  As we have previously stated, an abutting
landowner possesses an easement of access to and from the highway.[12]  The State argues appellees cannot claim
access rights to the highway because the property did not abut the pavement of
the Connector Road
.  The issue thus presented is whether a
landowner has a right of access to the highway when his land abuts only a
right-of-way to the highway, and not the highway pavement itself.

            Texas courts have refused to extend to an
abutting landowner the right of access when an intervening strip of land
separates the landowner’s property from the road’s surface.[13]  But the facts of this case are
distinguishable from those presented in Fuller,
Thomas, and Triplett.  The record
reflects, and the State even contends, appellees’ property abutted the public
right-of-way adjoining the Connector
 Road
.  Courts
in other jurisdictions have previously extended access rights to a landowner
whose property abuts the road easement but not the road itself.[14]  Accordingly, we hold the trial court properly
concluded appellees had a vested easement of access to the Connector Road
.  We therefore find it unnecessary to consider
the State’s third claim that it did not pledge access rights from appellees’
property to the Connector Road because the easement arises by operation of law.

            Fourth, the State claims appellees
had an easement of access from their property to the Interstate 45 frontage
road because their property abuts the State’s right-of-way.  We disagree. 
While appellees’ property abuts land formerly used as right-of-way for
the Connector Road
,
that road no longer exists.  Abandonment
occurs when the use for which the property was dedicated becomes either
impossible or so highly improbable as to become practically impossible, or
where the object of the use wholly fails.[15]  The State originally condemned what became
known as Parcel 9 in part for the purpose of constructing the Connector Road
.  That the State has planted grass and stored
construction materials in the area where the Connector Road and its accompanying
right-of-way used to be located is undisputed. 
The evidence thus reveals, despite the State’s arguments to the
contrary, the right-of-way abutting appellees’ property has been abandoned in
favor of some other purpose.  As
previously stated, Texas
law does not extend access rights to owners of property separated from the
highway by an abandoned right-of-way.[16]  We find appellees’ property abuts neither the
Interstate 45 frontage road nor its accompanying right-of-way, and therefore they
do not possess access rights to that highway.

            Fifth, the State claims the trial
court improperly concluded its proposed driveways were unsafe and dangerous as
a matter of law because the testimony cannot support a finding of denial of
access.  When conducting a legal
sufficiency review, we disregard all evidence and inferences contrary to the trial
court’s finding.[17]  We will uphold the trial court’s finding that
the driveways proposed by the State were unsafe and dangerous if more than a
scintilla of evidence exists to support that determination.[18]  Tom Edmonds, an experienced real estate
appraiser, testified that a person would “accept tremendous liability in
building a drive[way] anywhere from 240 to 590 feet [in length] to this
roadway. … No reasonable, prudent person would consider using this property
with the liability inherent in such a fashion.” 
We find the evidence was legally sufficient to support the trial court’s
finding that the driveways proposed by the State were unsafe and dangerous.

            Sixth, the State claims the trial
court erred in finding a material and substantial impairment of access to
appellees’ property.  We disagree.  Whether access rights have been materially
and substantially impaired is a question of law.[19]  We have already determined appellees had an
easement of access to the Connector
 Road
.  The
evidence establishes that the State removed the Connector Road
, leaving appellees without
access to any highway.  Moreover, it is
clear the driveways proposed by the State could not serve as suitable means of
access.  We therefore must agree with the
trial court’s conclusion that the removal of the Connector Road resulted in a material and
substantial impairment of access to appellees’ property.  Accordingly, the State’s second issue is
overruled.

Offer of Proof

            In
its third issue, the State argues the trial court committed reversible error in
refusing to permit the State to make an offer of proof during the trial on
damages.  The State sought to “offer and
develop testimony regarding the severity of the impairment of access to the
property or the viability and cost” of the driveway proposals it put forth
during the preliminary hearing on access rights and impairment.

            Error may not be predicated upon a
ruling that excludes evidence unless a substantial right of the party is
affected.[20]  We therefore review for harmful error.[21]  To show harm, the exclusion of evidence must
be controlling on a material issue and not cumulative of other evidence.[22]  A trial court’s refusal to permit an offer of
proof is harmless if the record is sufficient to apprise the court of the
nature of the evidence expected to be elicited.[23]  In the present case, the record clearly
reveals the State was attempting to relitigate the impairment-of-access issue at
the time it sought to make an offer of proof with its witness, David Dominy.  While the trial court warned counsel not to
revisit the access and impairment issues, it also allowed the State to develop
testimony as to the value of the property before and after removal of the Connector Road
.  After receiving this warning, the State immediately
concluded its examination of the witness. 
Thus, an offer of proof was unnecessary because the substance of the
evidence was apparent from the context within which the questions were asked.[24]

            Moreover, the testimony the State
sought to offer and develop concerning the impairment of access and the
viability and cost of the driveway proposals was immaterial to the issue of
damages.  Once appellees established, and
the trial court held, they had “no legal access to any road, street, or highway
of any sort” and the driveways proposed by the State could not serve as
“suitable means of access,” the only remaining issue was the amount of
compensation due.  This amount is
measured by the difference in the market value of the property before and after
the State removed the Connector
 Road
.[25]  The severity of impairment of access had
already been adjudicated, and the viability and cost of driveways, which were
already determined to be unsuitable means of access, were not relevant to that
issue.  Therefore, the trial court did
not err in refusing to permit the State to make an offer of proof during the
trial on damages.  The State’s third
issue is overruled.

The Sanctions Award

            In its fourth issue, the State
argues the trial court abused its discretion in awarding sanctions against its
counsel for discovery misconduct.  The
trial court found the State’s counsel asserted frivolous objections and made
groundless and repeated instructions not to answer questions posed by opposing
counsel during the depositions of Frances Willison and Marty Kobs.  We will overturn a trial court’s
discretionary imposition of sanctions only when it is based on an erroneous
view of the law or a clearly erroneous assessment of the evidence.[26]

            The State contends it could properly
invoke the attorney-client privilege during the deposition of Kobs because, in
addition to his administrative duties, Kobs provided legal advice to the
State.  We disagree.  The State had no legal basis for invoking the
attorney-client privilege—even if Kobs was a licensed attorney at the time the
alleged privileged communications occurred. 
The privilege does not apply to communications between an attorney and
his client when the attorney is employed in a non-legal capacity.[27]  While his exact title was not ascertained,
Kobs testified that he served in the capacity of a “program manager,” an
“assistant administrative director” or a “supervisor of the litigation support
section.”  More significantly, however,
was his answer to a single question during his deposition.  When asked by opposing counsel whether he was
ever hired by the State as an attorney to represent it in connection with legal
matters, Kobs responded in the negative. 
Despite this admission, counsel for the State persisted in invoking the
attorney-client privilege.

The State also contends it properly invoked the work-product
privilege during the depositions at issue. 
But during the Kobs deposition, the State repeatedly instructed the
witness not to answer questions dealing with facts pertinent to the case[28]
that clearly did not implicate the work-product privilege.[29]  Therefore, we uphold the trial court’s
finding that the State made groundless and repeated claims of privilege during
pre-trial discovery.

            The trial court also found the State
asserted frivolous objections during the depositions at issue.  Counsel for the State objected to the form of
the question 95 times over a span of 76 pages in the Willison deposition
transcript.  Many of those objections
were without any legal basis whatsoever. 
Therefore, we uphold the trial court’s finding that counsel for the
State asserted frivolous objections during pre-trial discovery.  Accordingly, we find the trial court did not
abuse its discretion in awarding sanctions against the State, and overrule the
State’s fourth issue.

Conclusion

            The judgment of the trial court is
affirmed.

 

                                                                                    

                                                                        /s/        Paul C. Murphy

                                                                                    Senior
Chief Justice

 

Judgment rendered and Opinion filed March 16,
2004.

Panel consists of Justices Anderson, Seymore,
and Murphy.*

 

 











[1] See State
and Dept. of Transp. v. Delany, No. 01-00-01170-CV, 2001 WL 493110 (Tex. App.—Houston
[1st Dist.] May
 10, 2001).





[2] See State v. Wood Oil Distributing, Inc.,
751 S.W.2d 863, 865 (Tex.
1988) (“It is incumbent upon the trial court to make this determination [of
whether there has been a material and substantial impairment of access] prior
to trial and to control the admission of evidence accordingly.”).





[3] Briscoe v. Goodmark Corp., 102 S.W.3d
714, 716 (Tex.
2003).





[4] The
Supreme Court dismissed for want of jurisdiction the State’s petition for
review of the judgment rendered by our sister court.





[5] See, e.g., City of Houston v. Precast
Structures, Inc., 60 S.W.3d 331, 338 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied); Russell v. City of Bryan,
919 S.W.2d 698, 704 (Tex. App.—Houston [14th Dist.] 1996, writ
denied); Brown v. Owens, 663 S.W.2d
30, 33-34 (Tex. App.—Houston [14th Dist.] 1983), aff’d in part and rev’d in part (on other
grounds), 674 S.W.2d 748 (Tex. 1984); Barrows
v. Ezer, 624 S.W.2d 613, 617 (Tex. App.—Houston [14th Dist.]
1981, no writ).  See also 6 Tex. Jur.
3d  Appellate
Review §§ 901-02 (1996).





[6] See Houston Endowment, Inc. v. City of Houston, 468 S.W.2d
540, 543 (Tex. Civ. App.—Houston [14th Dist.] 1971, writ ref’d
n.r.e.).





[7] See Briscoe, 102 S.W.3d at 716-717; Hudson v. Wakefield,
711 S.W.2d 628, 630 (Tex.
1986).





[8] DuPuy v. City of Waco,
396 S.W.2d 103, 108 (Tex.
1965).





[9] State v. Meyer, 403 S.W.2d 366, 370 (Tex. 1966).





[10] DuPuy, 396 S.W.2d at 108; State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996).





[11] Heal, 917 S.W.2d at 8.





[12] See infra note 9.





[13] See State v. Fuller, 407 S.W.2d 215, 221
(Tex. 1966)
(landowners’ property did not abut public road when separated by an abandoned
railroad right-of-way on property owned by the State); City of Wichita Falls v. Thomas, 523 S.W.2d 312, 314 (Tex. Civ.
App.—Fort Worth 1975, writ ref’d n.r.e.) (landowner’s property did not abut
public road when it was separated by strip of land belonging to the city that was
not used as a right-of-way); Mun. Inv.
Corp. v. Triplett, 371 S.W.2d
124, 126 (Tex. Civ. App.—Amarillo 1963, writ ref’d n.r.e.) (landowners’
property separated by vacant strip of land not being used as a right of way did
not abut public road).





[14] See Sebree v. Bd. of County Comm’rs, 829
P.2d 610, 616 (Kan. Ct. App. 1992), aff’d,
840 P.2d 1125 (Kan.
1992); Miller v. Berryhill Nursery Co.,
218 N.E.2d 467, 470 (Ohio Ct. App. 1966); State
v. Northwest Airlines, Inc., 413 N.W.2d 514, 518 (Minn. Ct. App. 1987).





[15] Adams v. Rowles, 228 S.W.2d 849, 852 (Tex. 1950).





[16] See Fuller, 407 S.W.2d at 221.





[17] See Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002).





[18] See id.





[19] Heal, 917 S.W.2d at 9.





[20] Tex. R. Evid. 103(a).





[21] See Tex.
R. App. P. 44.2(b).





[22] See Williams Distributing Co. v. Franklin, 898 S.W.2d 816, 817 (Tex. 1995).





[23] Pennington v. Brock, 841 S.W.2d 127, 131
(Tex. App.—Houston [14th
Dist.] 1992, no writ).





[24] See Tex.
R. Evid. 103(a)(2).





[25] See State v. Schmidt, 867 S.W.2d 769,
772-73 (Tex. 1993), cert. denied, 512 U.S.
1236 (1994) and 513 U.S. 812 (1994).





[26] See Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).





[27] Harlandale Indep. Sch. Dist. v. Cornyn,
25 S.W.3d 328, 332 (Tex. App.—Austin 2000, pet. denied).





[28] The State
asserted the work product privilege in response to questions concerning, e.g., Kobs’ involvement in the case, the
names of people Kobs met with in connection with the case, and the existence or
non-existence of a road in front of appellees’ property.





[29] See Owens-Corning Fiberglas Corp. v.
Caldwell, 818 S.W.2d 749, 750 (Tex.
1991) (stating that protection granted under work product privilege does not
extend to facts of case an attorney may acquire).  See
also Tex. R. Civ. P. 192.5.





* Senior Chief
Justice Paul C. Murphy sitting by assignment.