**HOUSTON ENDOWMENT, INC., Appellant,**

**v.**

**CITY OF HOUSTON, Texas et al., Appellees.**

**No. 438.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

May 12, 1971.

Rehearing Denied June 1, 1971.

John C. Nabors, Liddell, Sapp, Zivley & Brown, Houston, for appellant.

W. Lawrence Cook, Jr., Sr. Asst. City Atty., Houston, for appellees.

SAM D. JOHNSON, Justice.

On November 29, 1967, Houston Endowment, Inc., brought suit against the City of Houston seeking temporary and permanent

injunctive relief against the City's plan to annex and tax a 220-acre tract of unimproved land owned by Houston Endowment. On December 6, 1967, the District Court of Harris County, Texas, temporarily enjoined the City from passing on final reading the ordinance which would annex the Houston Endowment tract of land. The First Court of Civil Appeals reversed the trial court's decision and dissolved the temporary injunction against annexation. City of Houston v. Houston Endowment, Inc., 428 S.W.2d 706 (1968), err. ref., n. r. e. After the Supreme Court found "no reversible error" in that action the City of Houston completed the procedural steps necessary to annex the Houston Endowment tract. The City of Houston then sought to impose taxes for the year 1970 at the full rate for property within the general city limits. Houston Endowment thereafter challenged the legality of the City of Houston's plan to tax the land owned by the appellant. In May, 1970, the instant case was tried to a jury which answered the three submitted special issues in favor of Houston Endowment. The trial court granted the City of Houston's motion for judgment non obstante veredicto, however, and entered judgment that Houston Endowment take nothing. Houston Endowment has duly perfected appeal to this Court.

Houston Endowment owns approximately 770 acres of land in the Thomas Earle Survey in Harris County which is bounded on the north by the Houston Ship Channel. The approximately 200 acres in question here is a part of Houston Endowment's larger tract and is that part which is immediately adjacent to the Houston Ship Channel. The property is vacant, unimproved and devoted exclusively to agricultural purposes. Its greatest potential, however, is for industrial development.

■ Houston Endowment's 220-acre tract lies within a 5,000 foot wide strip of land that extended 20 air miles down the Houston Ship Channel which was specially annexed by Houston in 1913, pursuant to Articles 1183–1187, Vernon's Ann.Civ.St. This long strip of land (sometimes herein referred to as "specially annexed extension") lies on both sides of the ship channel. Pursuant to the cited statute it was annexed for the limited purpose of navigation and wharfage, but was *not* within the general city limits. Subsequent to the 1913 special annexation the City of Houston held exclusive jurisdiction of the specially annexed extension and no other city could annex or otherwise deal with any part of the area. City of Balena Park v. City of Houston, Tex.Civ.App., 133 S.W.2d 162, writ ref.; Tod v. City of Houston, 276 S.W. 419 (Tex.Com.App.1925).

On August 28, 1967, Article 1187–1, V. A.C.S., became effective. It provides:

"The governing body of any incorporated city which has heretofore annexed or which shall hereafter annex territory under authority of and for the limited purposes described in Articles 1183 through 1187 of the Revised Civil Statutes of Texas, 1925, shall have the right, power, and authority to designate all or any part of such area so annexed and remaining in such limited purpose annexation status as an industrial district, as the term is customarily used, and to treat with such area from time to time as such governing body may deem to be in the best interest of the city. Included in such rights and powers of the governing body of any such city is the permissive right and power to enter into contracts or agreements with the owner or owners of land in such industrial district to guarantee the continuation of the limited purpose annexation status of such district, and its immunity from general purpose annexation by the city for a period of time not to exceed ten years, and upon such other terms and conditions as the parties might deem appropriate. Such contract or agreement shall be evidenced in writing and may be renewed or extended for successive periods not to exceed ten years each by such governing body and the owner or owners of land in such industrial district."

In the month immediately following the effective date of the above statute, that is, in September, 1967, the Houston City Council declared its intention with respect to the property within the specially annexed extension by setting forth the City's intent to enter into industrial district contracts with property owners who made application prior to October 31, 1967. The City of Houston further declared its intent to generally annex the property of owners who did not apply for industrial district contracts. Guidelines were established for the industrial district contracts which provided that (1) as to land, an owner should annually pay the City a sum equal to that which would be paid in city ad valorem taxes if the city were within the general city limits, and (2) on property other than land, the owner should annually pay at a rate which would begin at a reduced or fractional percentage of the ad valorem tax which would be due if the property were within the general city limits and then increase on a graduated basis for the next five years until it equalled the tax rate on property within the general city limits. The rate would remain at that equal to the tax rate on property within the general city limits for the remainder of the 10-year industrial district contract. The City of Houston agreed that it would not generally annex property covered by industrial district contracts for ten years.

Houston Endowment did not apply for an industrial district contract. Thereafter, on November 8, 1967, Houston's City Council passed on first reading Ordinance 67–2146 purporting to generally annex Houston Endowment's 220-acre tract lying within the specially annexed extension together with a 150-foot wide connecting strip (also lying within the specially annexed extension) to Houston's existing general city limits. Houston Endowment then brought this suit seeking temporary and permanent injunctive relief against the City's plan to annex and tax its property. The District Court of Harris County enjoined the annexation and the First Court of Civil Appeals reversed and dissolved the temporary injunction. City of Houston v. Houston Endowment, Inc., 428 S.W.2d 706, err. ref., n. r. e. Thereafter, on April 2, 1969, Ordinance No. 67–2146 was passed on second and final reading and the procedural steps necessary for annexation of Houston Endowment's tract were completed. It is clear that since the date last referred to Houston Endowment's 220-acre tract has been within the general city limits of the City of Houston. Being within the general city limits the City of Houston sought to impose full city taxes on Houston Endowment's 220-acre tract for the year 1970 and the instant controversy issued.

At the instant trial the jury responded to three special issues. The jury found (1) that the market value of the Houston Endowment tract would be substantially impaired as a result of the annexation and taxation while charging only the rates specified to signers of industrial district contracts, (2) that the City of Houston's primary purpose in entering into industrial district contracts was to raise revenue and not for the purpose of regulation, and (3) that Houston Endowment's land would not receive any benefit from annexation. Houston Endowment's motion for judgment on the verdict was denied and the City of Houston's motion for judgment non obstante veredicto was granted.

Appellant Houston Endowment brings five points of error. The thrust of appellant's contention is that the City of Houston's industrial district rates or charges (for those with whom it has industrial district contracts) are actually taxes. Further, that being taxes they are discriminatory in that they favor (a) improved property over unimproved property (which is covered by an industrial district contract, therefore within the industrial district yet outside the general city limits), and (b) industrial district property covered by an industrial district contract (therefore being outside the general city limits) over property within the general city limits. Appel-

lant reasons that being discriminatory taxes they not only impair the value of its property but also violate Art. VIII, Sec. 1, of the Texas Constitution, V.A.T.S., which provides that taxation shall be equal and uniform.

■ We are of the opinion that Houston Endowment's allegations concerning the harmful and discriminatory aspects of taxation and the violation of constitutional provisions are substantially the same as its allegations upon the former appeal from the trial court's order granting the temporary injunction. In considering such former appeal, City of Houston et al. v. Houston Endowment, Inc., supra, at p. 709, the First Court of Civil Appeals stated:

"Appellee says the City's industrial district program is a violation of both Article VIII, Section 1, of the Texas Constitution, Vernon's Ann.St. (which provides that taxation shall be equal and uniform), and the equal protection provisions of the Fourteenth Amendment to the United States Constitution. Appellee's property is unimproved, so it would be taxed at the full rate whether appellee signs an industrial district contract or not. A different rate is provided for improvements on the land of those who sign a contract.

"Appellee says that since 90% of the surrounding tracts have on them other property worth over one million dollars, the result is that the surrounding properties are taxed at a lower rate than appellee's.

"We overrule this counterpoint. If the annexation is completed, appellee's land will be taxed on the same basis as other land within the general city limits, and property outside such limits will be taxed at a different rate. Such is the usual case.

"Appellee asserts that it will receive no benefit from annexation, that the market value of its land would suffer and that the result is a taking of the property without due process. We cannot sustain this theory. (Citing cases.)

"There being no disputed issue of fact, the questions for determination on this appeal are matters of law."

The questions now presented and most strenuously urged by Houston Endowment were advanced and fully considered in the former appeal by the First Court of Civil Appeals. That Court held that the City of Houston's industrial district program was not unconstitutional. A ruling by an appellate court on a question of law raised on appeal will generally be regarded as the law of the case in all subsequent proceedings in the same case, including a retrial and a subsequent appeal. Elliott v. Moffett, Tex.Civ.App., 165 S.W.2d 911, ref., w. o. m.; Allied Finance Company v. Shaw, Tex.Civ.App., 373 S.W.2d 100, ref., n. r. e. Although a determination of whether a prior decision in the same case will be reopened upon a second appeal is a matter within the discretion of the appellate court, Roberts v. Armstrong, 231 S.W. 371 (Tex. Com.App., op. adopted, 1921) this Court is not persuaded that this is a proper instance for its exercise.

■ Though the foregoing is considered dispositive the following has relevancy in this particular instance.

As will be recalled, Houston Endowment's property was unimproved land. Therefore, if it had signed an industrial district contract its charges would have been set at "A sum equal to the city ad valorem tax which would be due if the land were within Houston's general limits." It did not sign an industrial district contract and underwent annexation of its property into the general city limits. This alternative resulted in taxation identical to that applicable to all other property within the general city limits. Either alternative available to Houston Endowment would result in an annual payment to the City of the same identical sum of money whether it be denominated a charge or a tax. Either payment, whether denominated as a

charge or a tax, contends Houston Endowment, would be discriminatory. Aside from appellant's contentions, we believe it is apparent that Houston Endowment's tract, being *inside* the general city limits, is being taxed on the same basis as all other property *within* the general city limits. This has been stipulated. Even so, argues Houston Endowment, its annual *tax* payments, at least for the first five years, will be in excess of those *charges* applicable to improved property on which industrial contract have been made (which therefore is *outside* the general city limits).

Article 1187–1, V.A.T.S., provides that all or any part of that property specially annexed under Articles 1183 through 1187, V.A.T.S., may be designated as an industrial district. It further provides the specific permissive power of the City to enter into written contracts with owners of property therein " * * * to guarantee the continuation of the limited purpose annexation status of such district, and its immunity from general purpose annexation * * * upon such other terms and conditions as the parties might deem appropriate." Art. 1187–1, V.A.T.S., is almost identical to Art. 970a, Sec. 5, V.A.T.S., except that the latter refers to industrial districts created on property within the extraterritorial jurisdiction of a city and provides for contracts of seven years duration. In a similar attack involving Art. 970a, Sec. 5, V.A.T.S., this Court stated:

"It is therefore clear that the action taken by the city (of Pasadena) is in contemplation of and is authorized by Art. 970a, Sec. 5, and we find no constitutional objection thereto. It is assumed that appellee's land will be taxed at a lawful rate when it is taken into the city. The property of (other owners), not being annexed, will lie outside the limits of the city and within the extraterritorial jurisdiction. In view of the power of the city to annex such contiguous territory as it sees fit, we see no constitutional objection to the city's dealing with property outside its boundaries at a different tax rate. A statute or rule under constitutional attack is to be construed as valid if reasonably possible. Duncan v. Gabler, 147 Tex. 229, 215 S.W.2d 155. If there is a substantial basis for classification and if the classification is not unreasonable, arbitrary or capricious, the legislature or a Home Rule city acts within the legitimate scope of its authority and power. Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31, 36; Wood v. Wood, 159 Tex. 350, 320 S.W.2d 807. We believe a reasonable basis for classification under the above facts is afforded."

City of Pasadena v. Houston Endowment, Inc., Tex.Civ.App., 438 S.W.2d 152, 157, writ ref., n. r. e. For the reasons implied in the foregoing case, we hold that the action taken by the City in the instant case was in contemplation of and authorized by Art. 1187–1, to which we find no valid constitutional objection.

Appellant's points of error are overruled. The judgment of the trial court is affirmed.