(829 P.2d 610)
No. 66,968

ROBERT J. and REGINA M. SEBREE, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, *et al.*, *Appellees.*

Opinion filed April 3, 1992.

*Stephen P. Weir*, of Carpenter, Weir & Myers, Chartered, of Topeka, for the appellants.

*Jeffrey A. Chanay* and *Michael D. Strong*, of Entz & Chanay, of Topeka, for the appellees.

Before BRISCOE, C.J., DAVIS. J., and RICHARD W. WAHL, District Judge Retired, assigned.

DAVIS, J.: Robert and Regina Sebree appeal from the court's ruling on summary judgment that Orville Dreasher, Jr., and Geraldine Dreasher have a right of access to old U.S. Highway 40

by use of a spur road through the Sebrees' property. The court found that the Dreashers were abutting landowners to the Sebrees and had no other means of ingress and egress to their property. We affirm.

The Sebrees brought this action in 1988 seeking to quiet title against several defendants, damages for trespass, and injunctive relief. This controversy centers upon a road in Shawnee County that is located on the Sebrees' land.

In 1870, the Kansas Legislature called for several roads to be established in this state, including a road from Lawrence to Topeka. This proposed road cut diagonally through a quarter section of land now owned by the Sebrees. Their predecessor in title, David G. Jones, petitioned the Shawnee County Commissioners in 1880 to relocate the road, agreeing to grant the county a right-of-way on a 60-foot strip of land on the section lines of his property if it would not place the road diagonally through the quarter section. The county commissioners accepted Mr. Jones' grant of the right-of-way and approved the relocation of the road to the strip of land bounded on the west and south by the section lines. The road was constructed entirely upon the right-of-way, except where the southwest corner of the road was rounded off.

In 1919, the Sebrees' predecessors in title quitclaimed an additional tract of land to Shawnee County to allow the rounded curve.

After the road was constructed in the early 1900's, the Sebrees' predecessors in title gave permission to the Dreashers' predecessors in title, who owned the quarter section southwest of the Sebrees' property, to use part of their property as a path to the new road. These two sections were never owned by a common grantor. The Dreashers' predecessors in title used the path, or spur road, to reach the new road between approximately 1915 and the early 1950's. The spur road encroaches on the northwest quarter section by 20 feet. The northwest quarter is presently owned by Alice McCammon, who is not a party to this action.

In 1952, the State of Kansas altered the location of Highway 40 in order to straighten several curves in the vicinity of the Sebrees' property. The State condemned a strip of land straight through the Sebrees' property in the approximate location of the first road that had been relocated in the 1880's. Once the highway

was straightened, the old road only traveled from one point on the new road to another point on the new road. (Diagram is attached for further clarification as Appendix.) Since the condemnation, the old highway has been used only with the Sebrees' permission for the homes located to the southwest of the old road and the Sebrees' property.

Also in 1952, the Kansas Highway Commission withdrew the old right-angled road "'from the system of State Highways in Shawnee County, Kansas, with the provision that the road shall be maintained as a detour highway until such time as the herein designated route shall be completed and open to traffic.' "

The Dreashers claim the use of the spur road based upon the common-law right of access to a public highway. In the summer of 1988, the Dreashers and Ed Southall, also a named defendant in the case, attempted to widen the spur road to install a larger entrance-way on the Sebrees' property for a racetrack located on the Dreashers' property, which Mr. Southall leased. This was done without the Sebrees' permission. The Sebrees initiated this quiet title action and also brought suit against the Board of County Commissioners of Shawnee County, the Kansas Department of Transportation, and Rural Water District #8, which laid a water line alongside the old road.

In February 1989, the Sebrees moved for partial summary judgment, asking the court to declare them to be the fee simple title holders to the old road as of 1952, when the State decided to alter Highway 40's route. The court denied the motion, finding issues of material fact remained. While the matter was pending before the court, it granted the Sebrees a restraining order, preventing the Dreashers from harassing the Sebrees and also preventing any of the defendants from altering the spur road in any way. The Sebrees reached a settlement with Rural Water District #8, which was then dismissed from the lawsuit.

In the summer of 1990, the Sebrees again moved for summary judgment against the county commissioners, the Department of Transportation, the Dreashers, and Ed Southall. Southall did not respond to the motion and the Sebrees were granted summary judgment against him. The Dreashers also moved for summary judgment, asking the court to find they had a common-law right of access to the spur road and the old highway. The court found

that the Sebrees held fee title to the property at issue, subject to a road easement by Shawnee County for the old highway. The court also held that the Dreashers had a right of access to the old highway by way of the spur road because the Dreashers' property abuts the spur road, "all of which lies within Shawnee County's easement."

The court denied the Sebrees' motion to alter or amend and the Sebrees' request for trespass damages against Ed Southall on the basis that the journal entry granting summary judgment against Southall did not address plaintiffs' claim of trespass damages. The parties reached an agreement on a permanent injunction limiting any further widening or repair work to be done on the spur road. This appeal follows.

In its summary judgment order, trial court found that, as a matter of law, "[b]ecause the Dreasher property abuts Shawnee County's easement for the public road, which by definition is open to use by anyone, the . . . Defendants have the right of access to the road by way of the spur road."

The standard of review of summary judgment decisions is well settled.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.] The party opposing summary judgment, however, has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case. [Citations omitted.] If factual issues do exist, they must be material to the case to preclude summary judgment. [Citation omitted.]" *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

See *Hammig v. Ford*, 246 Kan. 70, 72, 785 P.2d 977 (1990). The burden of proof falls upon the Dreashers to show they are entitled to judgment as a matter of law.

The trial court determined that the Sebrees were the fee title owners of old Highway 40 and the spur road, but that Shawnee County retained an easement for both. The Sebrees admit that if the Dreashers prove they have a right of access to the road, then the Dreashers are entitled to enter onto the Sebrees' property to reach the old road. The Sebrees, however, contend that

summary judgment was improper because the Dreashers failed to show that their property abutted the public road and because a genuine issue of material fact remains regarding whether use of the spur road is reasonably necessary if a second road exists on the Dreashers' property allowing access to the same public road.

The trial court based its decision upon *Spurling v. Kansas State Park & Resources Authority,* 6 Kan. App. 2d 803, 636 P.2d 182 (1981), which addresses the common-law right of access to public roads by abutting landowners. In *Spurling,* residents of the Woodson Bend Subdivision sued the Kansas State Park & Resources Authority to provide them with additional access roads from the subdivision to the park road in Lake Crawford State Park. The trial court found that the residents' property came within 35 feet to 76 feet of actually touching the park road. The trial court held the park road to be a public road and that the residents, as abutting property owners, were entitled to reasonable access.

We reversed, finding that the residents were not abutting property owners and were not entitled to the common-law right of access. 6 Kan. App. 2d at 805. We cited *Teachers Insurance & Annuity Ass'n of America v. City of Wichita,* 221 Kan. 325, 330, 559 P.2d 347 (1977), which states that "it is recognized in the law of this state that the right of access to and from an existing public street or highway is one of the incidents of ownership of the land abutting thereon." See *Smith v. State Highway Commission,* 185 Kan. 445, 451, 346 P.2d 259 (1959). We stated that "[i]t is apparent this right of access has two components: 1) The persons claiming the right must own land *abutting* that street or highway; 2) There must be a *public* street or highway." 6 Kan. App. 2d at 804.

## Public Road

While the Sebrees did not appeal the trial court's finding that the old highway is a public road, they argue on appeal that the old road is a private road owned by them. We address this issue because the right of access depends upon two factors: (1) The persons claiming the right must own land *abutting* the road; and (2) there must be a *public* roadway. *Spurling,* 6 Kan. App. 2d at 804.

The Sebrees' enlisted the aid of Robert Richmond, an expert historian, to resolve the issue. Richmond stated in a letter that, prior to 1929, maintenance of the road at issue was the responsibility of Shawnee County. In 1928, the Kansas Constitution was amended to allow for a state agency responsible for a state highway system. The following year, the legislature established the Kansas Highway Commission. Richmond stated that at this time, Kansas counties were relieved of the responsibility for state roads.

It is unclear whether the easement for the road at issue transferred to the State or whether it remained with the county. The district court found that the easement for the old right-angled road has been held continuously by Shawnee County since 1880.

"No statute regarding the creation or operation of the Kansas Highway Commission transferred road easements held by the various counties to the State of Kansas or the Highway Commission. Therefore, no transfer of the easement at issue occurred by operation of law. Additionally, no evidence presented in public records reveals that the Shawnee County Commissioners transferred the easement to the state or Highway Commission."

This distinction is important, because if the State Highway Commission did not acquire the right-of-way, G.S. 1949, 68-413 (1951 Supp.) is inapplicable.

G.S. 1949, 68-413 (1951 Supp.) provides as follows:

"The state highway commission may dispose of any real estate or any right, title or degree or variety of interest therein as it may deem expedient or necessary whenever the commission determines that such real estate or interest therein, is no longer needed or used for state highway purposes, they may exchange the right of way to be abandoned for new or other right of way: *Provided*, That when any road on the state highway system is vacated, the lands or interests or rights therein acquired by the state highway commission for right of way under the provisions of this section, unless disposed of as above provided, shall revert to the present owners of the land of which it was originally a part."

K.S.A. 68-413 is substantially different now; the language regarding reversion to the original landowner was removed in 1961.

On October 8, 1952, the State Highway Commission found it necessary "to relocate and change and to redesignate Highway US 40" in the interest of public safety, convenience, and welfare. The "Resolution for Relocation and Redesignation of Road" declared the old right-angled road to "be hereby withdrawn from the system of State Highways in Shawnee County, Kansas, with

the provision that the road shall be maintained as a detour highway until such time as the [new road] shall be completed and open to traffic." This language suggests that the old road was indeed under State control. However, the district court found that "[s]ince the State Highway Commission had not acquired a right of way under the provisions of 68-413, the Commission's abandonment of the road was not subject to the provisions of 68-413."

G.S. 1949, 68-413 (1951 Supp.) provides that the State Highway Commission could acquire title to land by purchase, dedication, or exercise of the right of eminent domain. The Sebrees argued below that when the Commission was established in 1929, all easements, rights, and responsibilities were automatically transferred from the county commissioners to the Highway Commission. The trial court found no support for the Sebrees' argument in the statutes or applicable case law. We are unable to find legal support for this position.

Assuming the State had an interest in the property, *i.e.*, an easement for the right-of-way, the question becomes whether withdrawal of the road from the state highway system is equivalent to disposal of the interest pursuant to G.S. 1949, 68-413 (1951 Supp.). The statute authorizes the Commission to dispose of "any real estate or any right, title or degree or variety of interest therein," not just property it acquired pursuant to the statute. G.S. 1949, 68-413 (1951 Supp.). It seems logical that the State assumed control and maintenance of Highway 40 when the Commission was created in 1929, and thus had the power to vacate the road or put it back under county control.

However, the district court reasoned that even though the old road may have been reclassified as a state road in 1929, "[t]he statutes do not state that interests in land, such as easements, are transferred between the units of government as a matter of law due to a road's classification." Thus, under the court's holding, while the county road may have been reclassified as a road within the state system when the Highway Commission was established, the easement originally granted to the county in 1880 did not transfer to the State. The county continued to hold the easement, and when the Highway Commission withdrew the road from the state system in 1952, the situation returned to the status quo;

the Sebrees' predecessor in title owned the land in fee, subject to the county's express easement.

Moreover, G.S. 1949, 68-413 (1951 Supp.) would not apply because the State never had an interest in the property to dispose; it merely assumed control and maintenance of the highway for the benefit of Kansas motorists. This reasoning makes sense, for if David Jones had granted the easement to the State in 1880 instead of to the county, the State would clearly have an interest subject to disposal pursuant to the statute.

The county may only vacate the road pursuant to K.S.A. 68-102 or K.S.A. 68-114. Both statutes require affirmative action on the part of the county, and no such action appears in the record before this court. The district court found the public record devoid "of any writing giving notice that Shawnee County has ever transferred or vacated the easement for the road currently at issue."

The only other way the Sebrees could now have sole rights to the property burdened by the easement would be if the county abandoned the easement after 1952. The record reflects continued use of the old road by landowners south and west of the Sebrees' property, and there are several affidavits of record indicating the county and the township have performed maintenance on the old road, including installation of traffic control devices and snow and ice removal. The road has never been closed or obstructed. We recently held that "[s]ubsequent nonuse of an opened road is not destructive of the public right. [Citation omitted.]" *Barrett. v. Ninnescah Bow Hunters Ass'n*, 15 Kan. App. 2d 241, 243-44, 806 P.2d 485 (1991). The easement has not been abandoned, and as a result the road is open to public use.

We conclude, like the trial court, that the county holds an express easement which never reverted to the Sebrees or to their predecessors in title.

## Abutment

In *Spurling*, we applied the Black's Law Dictionary definition of "abut," which means " 'to reach' or 'to touch'." 6 Kan. App. 2d at 804; see Black's Law Dictionary 11 (6th ed. 1990). Thus, the residents in *Spurling* were technically not "abutting" landowners because their property did not actually touch the park

road. However, we pointed out that the term has not always been strictly construed, citing *Riddle v. State Highway Commission,* 184 Kan. 603, 339 P.2d 301 (1959). 6 Kan. App. 2d at 804. The Kansas Supreme Court stated in *Riddle*:

"The right [of access] is justified upon the grounds of necessity [citation omitted] and is such as is reasonably necessary for the enjoyment of the land [citation omitted]. It is a property right known in law as an 'easement appurtenant' or an 'easement access' to the abutting land [citations omitted]. It includes not only the right of the abutting owner to enter and leave his property by way of the highway, but also the right to have the premises accessible to patrons, clients and customers [citation omitted]." 184 Kan. at 610.

Nevertheless, we held in *Spurling* that the "close proximity" of the residents' land to the existing park road was not enough to allow the residents a right of access. 6 Kan. App. 2d at 804.

We were careful to draw a distinction between the situation where the strip of land between the landowners' property and the public road is owned in fee by the State, as was the case in *Spurling,* and the situation where the intervening land was actually a right-of-way, or a mere servitude imposed on the land. 6 Kan. App. 2d at 804-05. We held that "[s]ince the strip of land between the park road and [the residents'] property is owned by the State *and is not merely a right-of-way,*" the residents were not entitled to rely on the common-law right of access. 6 Kan. App. 2d at 805. (Emphasis added.) The issue of whether a property owner has a right of access to a public road where the owner's land only abuts a right-of-way to the public road, and not the road itself, has not yet been decided by a Kansas appellate court.

*Spurling* refers to three cases where courts in other jurisdictions have "refused to extend an abutter's right of access to one whose land does not adjoin at any point the road surface." 6 Kan. App. 2d at 805. See *State v. Fuller,* 407 S.W. 2d 215 (Tex. 1966) (owners' land separated from public road by an abandoned railroad right-of-way on property owned by the State); *City of Wichita Falls v. Thomas,* 523 S.W.2d 312 (Tex. Civ. App. 1975) (plaintiff's property was not "abutting" property where it was separated from the public street by a triangular strip of land belonging to the city that was not used as a right-of-way); *Farnsworth v. Soter's Inc.,* 24 Utah 2d 199, 468 P.2d 372 (1970) (plaintiffs' property

not contiguous at any point with old public road where 10 to 14 feet separates plaintiffs' north property line and the south edge of the roadway).

None of the above cases is factually on point with the present case. The record reflects that the Dreashers' property actually touches the spur road, or right-of-way, at the point where the two quarter sections meet. (See Appendix.) The land between the old highway and the Dreashers' property is not merely a strip of unimproved land, as in *Spurling*, but is instead a right-of-way to a public road. The Sebrees do not appeal the trial court's finding that the old highway is a public road.

The question is whether touching the right-of-way is enough, or whether the Dreashers' property must actually abut the old road itself.

The Sebrees contend that the Dreashers' property must touch the road they seek access to and not just the spur road. The trial court refused to adopt the Sebrees' argument that the Dreashers' land must abut the road surface and not just the road easement, stating that such an interpretation would "deny thousands of rural residents across this state the right of access to county roads" if their property reached only to the road's shoulder but not the road's surface. We agree. Moreover, denying the Dreashers a right of access to the spur road, upon which Shawnee County holds an easement for the old public road, simply does not make sense. Based upon our language in *Spurling*, we conclude that the trial court properly awarded the Dreashers a right of access to the spur road and the old Highway 40.

## Access by Necessity

The Sebrees also contend that the Dreashers are not entitled to a right of access to the spur road because such access is not reasonably necessary to the defendants. While this issue is not critical because we have agreed with the trial court's determination that the road is a public road, we nevertheless address the Seebrees' contention. The Sebrees contend that the Dreashers have access to old Highway 40 from a road on the Dreashers' own property, and thus should not be allowed to use the road on their property.

The common-law right of access "is justified upon the grounds of necessity." *Riddle*, 184 Kan. at 610. See *Longnecker v. Railroad Co.*, 80 Kan. 413, 102 Pac. 492 (1909) (necessity need not be absolute). The right assumes that the abutting landowner has no other reasonable means of reaching the highway but through the property of his adjoining neighbor. After reviewing the facts presented by the parties, the trial court determined that the spur road from the old highway "is the only way of ingress and egress" leading to the Dreashers' property. The Sebrees argue that a material issue of fact remains as to whether use of the spur road by the Dreashers is reasonably necessary.

The Sebrees point to a possible second route for the Dreashers. They contend that other roads on the Dreashers' property lead to Green Hills Road, and that this road provides direct access to old Highway 40. The Sebrees argue that the only reason the Dreashers do not use this alternative route is because it is cheaper for them to burden their adjoining neighbors.

Both parties in their briefs cite to statements made by an engineer which are not part of the record and also insert facts within their personal knowledge to bolster their respective arguments concerning this issue. The Sebrees place great weight on the testimony of Mike Engler, an engineer hired by the Dreashers, who testified at some point before the Metro Planning Commission. According to the Sebrees, he testified:

" 'There is presently through additional property that the Dreashers own to the west that faces out on the Green Hills road more or less a farm access road which goes through the timber and makes a low water crossing, basically a mud crossing, across the creek right now. But the trees have already been cleared for it and there is adequate space through the timber and out to Green Hills road, it would require the construction of some type of culvert for [an] all weather crossing over the creek.' "

The Sebrees cite page 973 of the record for this statement, but that page is merely part of the plaintiffs' motion to alter or amend the judgment which provides the same statement. No transcript of Mr. Engler's testimony is found in the record on appeal.

The appellees filed a motion to strike this statement from appellants' brief, but the court denied the motion. Appellees filed in response a letter to them from Mike Engler, stating that, while a second access from the Dreashers' property to Green Hills Road

might be possible, upon further review he had determined the idea was not feasible for several reasons, including the necessity of building a bridge over an intervening creek and the prohibitive cost of hard surface pavement.

None of the plat documents provided by either party show a road on the Dreashers' property leading to Green Hills Road. The trial court correctly concluded that the only existing means of ingress and egress for the Dreashers was use of the spur road to reach the old highway, and eventually new Highway 40.

Based on *Spurling* and the limited facts of record, the trial court properly granted the Dreashers a right of access to the spur road on the Sebrees' property. The Sebrees are protected from misuse of the right by the permanent injunction agreed to by the parties and approved by the court, which prevents any action to change or enlarge the spur road and prohibits the placement of banners, signs, or other markings along the road to advertise the racetrack.

Affirmed.