**The STATE of Texas and Texas Department of Transportation, Appellants,**

v.

**George M. DELANY and Patricia Ann Delany, Appellees.**

No. 14–03–00052–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 16, 2004.

Rehearing Overruled June 17, 2004.

Opinion Dissenting to Denial of Rehearing En Banc Nov. 18, 2004.

Cavitt Wendlandt, Rick Thompson, Lisa Marie Nieman, Susan Desmarais Bonnen, Austin, for appellants.

Billy C. Dyer, H. Dixon Montague, Houston, for appellees.

Panel consists of Justices ANDERSON, SEYMORE, and MURPHY.[*]

## OPINION

PAUL C. MURPHY, Senior Chief Justice (Assigned).

The State of Texas and the Texas Department of Transportation (collectively "the State") appeal from the trial court's award of $497,637.80, including costs, to appellees George and Patricia Delany. Appellees had originally brought an inverse condemnation action arising from the State's removal of the highway (the "Connector Road") connecting the north-

---

[*] Senior Chief Justice Paul C. Murphy sitting by assignment.

bound frontage road of Interstate 45 to Johnny Palmer Road. The State filed a plea to the jurisdiction, which was denied by the trial court. On interlocutory appeal, the First Court of Appeals affirmed and remanded the case for trial on the merits.[1] After making a preliminary finding that there had been a material and substantial impairment of access, the trial court conducted a bench trial on the issue of damages.[2] This appeal followed.

The State presents four issues for review. It contends: (1) appellees' inverse condemnation claim is not ripe for review; (2) appellees failed to prove an unconstitutional taking of access to their property as a matter of law; (3) the trial court committed reversible error in refusing to permit the State to make an offer of proof; and (4) the trial court abused its discretion in awarding sanctions against the State. We affirm.

### Ripeness

In one issue, the State argues appellees' inverse condemnation claim is not ripe for review. Appellees counter by arguing the law-of-the-case doctrine bars the State from relitigating the ripeness issue because the First Court of Appeals has al-ready ruled on this claim in a prior appeal. We agree with appellees' contention.

■ The Supreme Court of Texas recently defined the law-of-the-case doctrine as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent steps."[3] The State argues this doctrine is inapplicable because a court of last resort, namely the Supreme Court, has not decided this issue.[4] But this contention does not recognize the long line of cases where this Court has applied the doctrine to issues it has previously decided.[5] This Court has also applied the doctrine to issues previously decided by the First Court of Appeals.[6]

The law-of-the-case doctrine therefore bars relitigation of the State's ripeness claim unless either: (1) the earlier holding is clearly erroneous or (2) the later stage of litigation presents different parties, different issues or more fully developed facts.[7] The State urges us to find that our sister court's earlier holding in this case is clearly erroneous, yet it advances identical arguments and citations in support of its claim as before. We hold the law-of-the-case doctrine bars relitigation of the

---

1. See State and Dept. of Transp. v. Delany, No. 01–00–01170–CV, 2001 WL 493110 (Tex. App.-Houston [1st Dist.] May 10, 2001).

2. See State v. Wood Oil Distributing, Inc., 751 S.W.2d 863, 865 (Tex.1988) ("It is incumbent upon the trial court to make this determination [of whether there has been a material and substantial impairment of access] prior to trial and to control the admission of evidence accordingly.").

3. Briscoe v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex.2003).

4. The Supreme Court dismissed for want of jurisdiction the State's petition for review of the judgment rendered by our sister court.

5. See, e.g., City of Houston v. Precast Structures, Inc., 60 S.W.3d 331, 338 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); Russell v. City of Bryan, 919 S.W.2d 698, 704 (Tex.App.-Houston [14th Dist.] 1996, writ denied); Brown v. Owens, 663 S.W.2d 30, 33–34 (Tex.App.-Houston [14th Dist.] 1983), aff'd in part and rev'd in part (on other grounds), 674 S.W.2d 748 (Tex.1984); Barrows v. Ezer, 624 S.W.2d 613, 617 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ). See also 6 TEX. JUR. 3d Appellate Review §§ 901–02 (1996).

6. See Houston Endowment, Inc. v. City of Houston, 468 S.W.2d 540, 543 (Tex.Civ.App.-Houston [14th Dist.] 1971, writ ref'd n.r.e.).

7. See Briscoe, 102 S.W.3d at 716–717; Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986).

State's ripeness claim and overrule its first issue.

### Unconstitutional Taking

In its second issue, the State argues the trial court erred in holding that an unconstitutional taking occurred when the State removed the Connector Road abutting appellees' property. While the State raises several claims in connection with this issue, we find none requires reversal.

 The State first claims that redesigning exit ramps within its existing right-of-way is not an unconstitutional taking as a matter of law. However, it is well settled that a direct physical invasion of property is not required under Article I, Section 17 of the Texas Constitution to entitle a landowner to compensatory damages.[8] One who owns property abutting a highway possesses an easement of access to and from the existing highway in addition to those rights held in common with the general public.[9] This easement of access is a constitutionally-protected property right, and a landowner is entitled to compensation if a material and substantial impairment of access has been established.[10] This would include compensation for diminution in value of the property resulting from the loss of access.[11] Therefore, it is well settled that an abutting landowner may be entitled to compensation when the State alters the use of its existing right-of-way, provided that a material and substantial impairment of access has been established.

Second, the State claims the trial court erred in concluding appellees had a vested easement of access to the Connector Road. As we have previously stated, an abutting landowner possesses an easement of access to and from the highway.[12] The State argues appellees cannot claim access rights to the highway because the property did not abut the pavement of the Connector Road. The issue thus presented is whether a landowner has a right of access to the highway when his land abuts only a right-of-way to the highway, and not the highway pavement itself.

 Texas courts have refused to extend to an abutting landowner the right of access when an intervening strip of land separates the landowner's property from the road's surface.[13] But the facts of this case are distinguishable from those presented in *Fuller, Thomas,* and *Triplett.* The record reflects, and the State even contends, appellees' property abutted the public right-of-way adjoining the Connector Road. Courts in other jurisdictions have previously extended access rights to a landowner whose property abuts the road easement but not the road itself.[14]

---

**8.** *DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex.1965).

**9.** *State v. Meyer,* 403 S.W.2d 366, 370 (Tex. 1966).

**10.** *DuPuy,* 396 S.W.2d at 108; *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996).

**11.** *Heal,* 917 S.W.2d at 8.

**12.** *See infra* note 9.

**13.** *See State v. Fuller,* 407 S.W.2d 215, 221 (Tex.1966) (landowners' property did not abut public road when separated by an abandoned railroad right-of-way on property owned by the State); *City of Wichita Falls v. Thomas,* 523 S.W.2d 312, 314 (Tex.Civ.App.-Fort Worth 1975, writ ref'd n.r.e.) (landowner's property did not abut public road when it was separated by strip of land belonging to the city that was not used as a right-of-way); *Mun. Inv. Corp. v. Triplett,* 371 S.W.2d 124, 126 (Tex.Civ.App.-Amarillo 1963, writ ref'd n.r.e.) (landowners' property separated by vacant strip of land not being used as a right of way did not abut public road).

**14.** *See Sebree v. Bd. of County Comm'rs,* 16 Kan.App.2d 772, 829 P.2d 610, 616 (1992), *aff'd,* 251 Kan. 776, 840 P.2d 1125 (1992); *Miller v. Berryhill Nursery Co.,* 7 Ohio App.2d

Accordingly, we hold the trial court properly concluded appellees had a vested easement of access to the Connector Road. We therefore find it unnecessary to consider the State's third claim that it did not pledge access rights from appellees' property to the Connector Road because the easement arises by operation of law.

■ Fourth, the State claims appellees had an easement of access from their property to the Interstate 45 frontage road because their property abuts the State's right-of-way. We disagree. While appellees' property abuts land formerly used as right-of-way for the Connector Road, that road no longer exists. Abandonment occurs when the use for which the property was dedicated becomes either impossible or so highly improbable as to become practically impossible, or where the object of the use wholly fails.[15] The State originally condemned what became known as Parcel 9 in part for the purpose of constructing the Connector Road. That the State has planted grass and stored construction materials in the area where the Connector Road and its accompanying right-of-way used to be located is undisputed. The evidence thus reveals, despite the State's arguments to the contrary, the right-of-way abutting appellees' property has been abandoned in favor of some other purpose. As previously stated, Texas law does not extend access rights to owners of property separated from the highway by an abandoned right-of-way.[16] We find appellees' property abuts neither the Interstate 45 frontage road nor its accompanying right-of-way, and therefore they do not possess access rights to that highway.

■ Fifth, the State claims the trial court improperly concluded its proposed driveways were unsafe and dangerous as a matter of law because the testimony cannot support a finding of denial of access. When conducting a legal sufficiency review, we disregard all evidence and inferences contrary to the trial court's finding.[17] We will uphold the trial court's finding that the driveways proposed by the State were unsafe and dangerous if more than a scintilla of evidence exists to support that determination.[18] Tom Edmonds, an experienced real estate appraiser, testified that a person would "accept tremendous liability in building a drive[way] anywhere from 240 to 590 feet [in length] to this roadway.... No reasonable, prudent person would consider using this property with the liability inherent in such a fashion." We find the evidence was legally sufficient to support the trial court's finding that the driveways proposed by the State were unsafe and dangerous.

■ Sixth, the State claims the trial court erred in finding a material and substantial impairment of access to appellees' property. We disagree. Whether access rights have been materially and substantially impaired is a question of law.[19] We have already determined appellees had an easement of access to the Connector Road. The evidence establishes that the State removed the Connector Road, leaving appellees without access to any highway. Moreover, it is clear the driveways proposed by the State could not serve as

---

30, 36 O.O.2d 89, 218 N.E.2d 467, 470 (1966); *State v. Northwest Airlines, Inc.*, 413 N.W.2d 514, 518 (Minn.Ct.App.1987).

**15.** *Adams v. Rowles*, 149 Tex. 52, 228 S.W.2d 849, 852 (1950).

**16.** *See Fuller*, 407 S.W.2d at 221.

**17.** *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002).

**18.** *See id.*

**19.** *Heal*, 917 S.W.2d at 9.

suitable means of access. We therefore must agree with the trial court's conclusion that the removal of the Connector Road resulted in a material and substantial impairment of access to appellees' property. Accordingly, the State's second issue is overruled.

### Offer of Proof

In its third issue, the State argues the trial court committed reversible error in refusing to permit the State to make an offer of proof during the trial on damages. The State sought to "offer and develop testimony regarding the severity of the impairment of access to the property or the viability and cost" of the driveway proposals it put forth during the preliminary hearing on access rights and impairment.

Error may not be predicated upon a ruling that excludes evidence unless a substantial right of the party is affected.[20] We therefore review for harmful error.[21] To show harm, the exclusion of evidence must be controlling on a material issue and not cumulative of other evidence.[22] A trial court's refusal to permit an offer of proof is harmless if the record is sufficient to apprise the court of the nature of the evidence expected to be elicited.[23] In the present case, the record clearly reveals the State was attempting to relitigate the impairment-of-access issue at the time it sought to make an offer of proof with its witness, David Dominy. While the trial court warned counsel not to revisit the access and impairment issues, it

also allowed the State to develop testimony as to the value of the property before and after removal of the Connector Road. After receiving this warning, the State immediately concluded its examination of the witness. Thus, an offer of proof was unnecessary because the substance of the evidence was apparent from the context within which the questions were asked.[24]

Moreover, the testimony the State sought to offer and develop concerning the impairment of access and the viability and cost of the driveway proposals was immaterial to the issue of damages. Once appellees established, and the trial court held, they had "no legal access to any road, street, or highway of any sort" and the driveways proposed by the State could not serve as "suitable means of access," the only remaining issue was the amount of compensation due. This amount is measured by the difference in the market value of the property before and after the State removed the Connector Road.[25] The severity of impairment of access had already been adjudicated, and the viability and cost of driveways, which were already determined to be unsuitable means of access, were not relevant to that issue. Therefore, the trial court did not err in refusing to permit the State to make an offer of proof during the trial on damages. The State's third issue is overruled.

### The Sanctions Award

In its fourth issue, the State argues the trial court abused its discretion in awarding sanctions against its counsel for

**20.** Tex.R. Evid. 103(a).

**21.** See Tex.R.App. P. 44.2(b).

**22.** See Williams Distributing Co. v. Franklin, 898 S.W.2d 816, 817 (Tex.1995).

**23.** Pennington v. Brock, 841 S.W.2d 127, 131 (Tex.App.-Houston [14th Dist.] 1992, no writ).

**24.** See Tex.R. Evid. 103(a)(2).

**25.** See State v. Schmidt, 867 S.W.2d 769, 772–73 (Tex.1993), cert. denied, 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994) and 513 U.S. 812, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994).

discovery misconduct. The trial court found the State's counsel asserted frivolous objections and made groundless and repeated instructions not to answer questions posed by opposing counsel during the depositions of Frances Willison and Marty Kobs. We will overturn a trial court's discretionary imposition of sanctions only when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.[26]

The State contends it could properly invoke the attorney-client privilege during the deposition of Kobs because, in addition to his administrative duties, Kobs provided legal advice to the State. We disagree. The State had no legal basis for invoking the attorney-client privilege—even if Kobs was a licensed attorney at the time the alleged privileged communications occurred. The privilege does not apply to communications between an attorney and his client when the attorney is employed in a non-legal capacity.[27] While his exact title was not ascertained, Kobs testified that he served in the capacity of a "program manager," an "assistant administrative director" or a "supervisor of the litigation support section." More significantly, however, was his answer to a single question during his deposition. When asked by opposing counsel whether he was ever hired by the State as an attorney to represent it in connection with legal matters, Kobs responded in the negative. Despite this admission, counsel for the State persisted in invoking the attorney-client privilege.

The State also contends it properly invoked the work-product privilege during the depositions at issue. But during the Kobs deposition, the State repeatedly instructed the witness not to answer questions dealing with facts pertinent to the case[28] that clearly did not implicate the work-product privilege.[29] Therefore, we uphold the trial court's finding that the State made groundless and repeated claims of privilege during pre-trial discovery.

The trial court also found the State asserted frivolous objections during the depositions at issue. Counsel for the State objected to the form of the question 95 times over a span of 76 pages in the Willison deposition transcript. Many of those objections were without any legal basis whatsoever. Therefore, we uphold the trial court's finding that counsel for the State asserted frivolous objections during pre-trial discovery. Accordingly, we find the trial court did not abuse its discretion in awarding sanctions against the State, and overrule the State's fourth issue.

*Conclusion*

The judgment of the trial court is affirmed.

Chief Justice HEDGES, Senior Chief Justice MURPHY,* and Justices YATES,

**26.** *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

**27.** *Harlandale Indep. Sch. Dist. v. Cornyn,* 25 S.W.3d 328, 332 (Tex.App.-Austin 2000, pet. denied).

**28.** The State asserted the work product privilege in response to questions concerning, *e.g.,* Kobs' involvement in the case, the names of people Kobs met with in connection with the case, and the existence or non-existence of a road in front of appellees' property.

**29.** *See Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749, 750 (Tex.1991) (stating that protection granted under work product privilege does not extend to facts of case an attorney may acquire). *See also* Tex.R. Civ. P. 192.5.

ANDERSON, FOWLER, FROST, SEYMORE, and GUZMAN voted to deny rehearing en banc.

Justice HUDSON dissented to the denial of en banc rehearing.

Justice EDELMAN joined the dissent.

J. HARVEY HUDSON, Justice, dissenting to the denial of en banc rehearing.

George and Patricia Delany sued the State of Texas and the Texas Department of Transportation for inverse condemnation seeking compensation for the alleged denial of access to their unimproved 3.48 acre tract of land in Galveston County. After a bench trial, the court found for the Delanys and awarded them actual damages for "the State's material and substantial impairment of access," sanctions, prejudgment interest, and court costs for a total judgment of $497,637.80. A panel of this court subsequently affirmed the trial court's judgment.[1] The State now seeks en banc rehearing. Because I find both the law and logic of the panel's opinion to be seriously flawed, I respectfully dissent to the denial of en banc rehearing.

In 1947, the State condemned a 300 foot-wide right-of-way for the construction of the "Gulf Freeway," also known today as Interstate Highway 45. The new highway intersected Johnny Palmer Road. In 1965, the State began constructing an overpass to enable traffic on Johnny Palmer Road to pass over IH–45. To facilitate the construction of a highway exit for Johnny Palmer Road, the State condemned an additional 5.733 acres belonging to the Delanys, leaving a remainder of 3.48 acres.

1. *See State v. Delany,* 149 S.W.3d 655 (Tex. App.—Houston [14th Dist.] 2004).

Although the remainder abutted the highway right-of-way, the Delanys had no direct access to any public road. The nearest road was the Johnny Palmer Road exit—approximately 50 to 60 feet away. The Delanys could have applied for a permit for as many as three driveways across the right-of-way to gain access to the Johnny Palmer Road exit, but they never applied for a permit. In 1998, the State relocated the Johnny Palmer Road exit for safety reasons, and removed the former access road. Now, the Delanys' nearest public road is the IH–45 frontage road. The Delanys still have potential "access" to IH–45 in that the State has agreed to permit them to have two driveways of 240 and 590 feet across the highway right-of-way. The Delanys, however, have not availed themselves of this offer.

To succeed in a suit for inverse condemnation, the plaintiff must show (1) the government physically appropriated or invaded his property, or (2) it unreasonably interfered with his right to use and enjoy the property, such as by restricting access or denying a permit for development. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex.1992). Here, the Delanys do not contend the State appropriated or invaded their property. Rather, they claim they "have been deprived of all access on and off the Property, effectively landlocking the Property." Were this allegation true, the Delanys undoubtedly would be entitled to compensation. However, the Delanys have always had a limited right of access to the highway, and that is what they still have. *See Pennysavers Oil Co. v. State*, 334 S.W.2d 546, 549 (Tex.Civ.App.—San Antonio 1960, writ ref'd).

The panel opinion relies heavily on the fact that property owners abutting a highway have a compensable, constitutionally

protected property right in an easement of access to and from the highway. *See Du-Puy v. City of Waco,* 396 S.W.2d 103, 108 (Tex.1965). However, the landowner is only guaranteed "reasonable" access, and a landowner's access is not materially and substantially impaired if he retains access to his property by way of a different street or a more circuitous route. *Carson v. State,* 117 S.W.3d 63, 69 (Tex.App.—Austin 2003, no pet.). Here, the State offered evidence that a driveway permit already has been conditionally granted that would allow the Delanys access to IH–45 via two driveways if and when they should ever desire such driveways. Citing *State v. Fuller,* the panel rejected this argument under the mistaken theory that the State has abandoned the right-of-way of the former Johnny Palmer Road exit and, thus, no access rights may now be granted across it. 407 S.W.2d 215, 221 (Tex.1966). This rationale is patently erroneous.

The State acquired absolute title to the land in 1965. The old Johnny Palmer Road exit has been removed, but the State still holds the land in fee simple. Thus, while *Fuller* stands for the proposition that the State, in some circumstances, may not be *required* to grant access across the land, nothing in *Fuller* suggests the State does not possess the power and authority to do so if it chooses. In this sense, the State is correct in its assertion that the Delanys' suit is premature. If the State should on some *future* occasion refuse access to IH–45 by denying driveway permits across its property, an inverse condemnation case undoubtedly would ripen. Until such time, the Delanys can only offer evidence of a potential inverse condemnation.

Whether access rights have been materially and substantially impaired is a question of law. *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996). Accordingly, we have no obli-gation to defer to the trial court's conclusions in this regard. *See Interstate North-borough P'ship v. State,* 66 S.W.3d 213, 220 (Tex.2001). Prior to the relocation of the Johnny Palmer Road exit, the Delanys had potential access to the IH–45 frontage road via driveways to the Johnny Palmer Road exit ramp and thence to Johnny Palmer Road and thence to the Johnny Palmer Road entrance ramp. Today, the Delanys have potential access via drive-ways directly to the IH–45 frontage road. The Delanys argue that such driveways are an impairment of their former poten-tial access because the driveways will have to be considerably longer than those that could have been constructed before the Johnny Palmer Road exit was relocated. However, circuity of travel is, as a matter of law, non-compensable. *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988). Moreover, the driveways will provide a more direct and shorter route to IH–45 than the old Johnny Palmer Road exit.

While framed in terms of a denial or impairment of access, the Delanys real complaint is that the commercial value of their property was $2.50 per square foot before the Johnny Palmer Road exit was relocated. Today, the property's value is approximately 25¢ per square foot. The Delanys contend they are entitled to recov-er the difference in the value of their property before and after the Johnny Palmer Road exit was relocated.

The Delanys may well have suffered a diminution in the value of their property, but it is well established that the benefits which come and go from the changing currents of travel are not matters in re-spect to which any individual has any vest-ed right against the judgment of the public authorities. *See State Highway Comm'n v. Humphreys,* 58 S.W.2d 144, 145 (Tex. Civ.App.—San Antonio 1933) (*quoting Hel-ler v. Atchison, T. & S.F. Ry. Co.,* 28 Kan.

625 (1882)). "If the public authorities could never change a street or highway without paying all persons along such thoroughfares for their loss of business, the cost would be prohibitive. The highways primarily are for the benefit of the traveling public, and are only incidentally for the benefit of those who are engaged in business along its way. They build up their businesses knowing that new roads may be built that will largely take away the traveling public. This is a risk they must necessarily assume." *Id.*

In fact, the Texas Supreme Court has never allowed recovery in an inverse condemnation case for damages resulting from a diversion of traffic or a circuity of travel. *State v. Schmidt,* 867 S.W.2d 769, 774 (Tex.1993). If the State had decided to build a new freeway a mile from the Delanys' property, the Delanys likewise would have lost the commercial value of their land, "but no abutting property owner has a vested interest in the traffic that passes in front of his property, and if this traffic is diverted by the State building a road at another place, and the traveling public prefer to travel the new road and abandon the old road, the State cannot be held liable for any loss of trade suffered by an abutting landowner on the old abandoned road." *Pennysavers,* 334 S.W.2d at 549. A landowner simply has no vested interest in the volume or route of passersby. *Schmidt,* 867 S.W.2d at 774.

In summary, a landowner may not "recover damages for inverse condemnation under Tex. Const. art. I, § 17 where the government has not physically appropriated, denied access to, or otherwise directly restricted the use of the landowner's property." *Westgate, Ltd.,* 843 at 450. Yet, this is precisely what this court has permitted the Delanys to do. Accordingly, I respectfully dissent to the denial of en banc rehearing.