IN THE SUPREME COURT OF TEXAS
















IN THE SUPREME COURT OF TEXAS

 

════════════

No. 04-0628

════════════

 

The State of Texas and the Texas
Department of Transportation, Petitioners,

 

v.

 

George M. Delany and Patricia
Ann Delany, 

Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Fourteenth District
of Texas

════════════════════════════════════════════════════

 

 

PER CURIAM

 

                                       

      In this
inverse condemnation case, the owner of raw land recovered a judgment for 90
percent of the property’s value based on alleged impairment of access. A few
months after the court of appeals affirmed, we held in County of Bexar v.
Santikos that when a tract has “no businesses, homes, driveways, or other
improvements of any kind,” an impairment claim cannot be sustained on the basis
that “someday a developer might want to build a driveway at the single most
difficult and expensive location on the entire property.” 144
S.W.3d 455, 460-61 (Tex.
2004). Based on that reasoning, we reverse the portion of the court of
appeals’ judgment that affirmed the impairment claim here.

In
1947, the State of Texas acquired 29.57 acres
in Galveston County from the predecessors of George
and Patricia Delany for the construction of Interstate Highway 45. Originally,
I-45 intersected a nearby road called Johnny
 Palmer Road at grade level. By 1965 the State
began constructing an overpass for Johnny
 Palmer Road at the intersection. For this project
the State condemned an additional 5.733 acre tract, known as Parcel 9, from the
Delanys’ predecessors. Parcel 9, which abuts the northbound frontage road of
I-45, was acquired for the overpass itself, as well as accompanying drainage
facilities, an embankment, a park‑and‑ride lot, and an exit
referred to by the parties as the Connector
 Road
. This road skirted the eastern edge of Parcel
9 in a bell-shaped curve, connecting the I-45 northbound frontage road with Johnny Palmer Road
.


In
its 1965 Petition for Condemnation of Parcel 9, the State pleaded that 

 

Plaintiff, in the
exercise of the police power for the preservation of human life and safety, and
under existing laws, has designated said highway as a Controlled Access
Highway, and roads are to be built as a part of said highway whereby the right
of ingress and egress to or from the remaining property of defendants abutting
on said highway is not to be denied.

 

The Delany
Property consists of 3.48 acres of the “remaining property” and abuts the
eastern edge of Parcel 9. The Delany Property remains undeveloped and is
presently used as grazing land; no driveways were ever constructed to join it
to the adjacent Connector Road
.


In
1998 the State demolished the Connector
 Road for safety reasons. Following this removal,
the Delany Property continued to abut Parcel 9, but no longer directly abutted
any public road. The nearest remaining road to the Delany Property is the
northbound frontage road of I-45, from which it is separated by the now roadless Parcel 9. Nevertheless, the State contends the
Delanys retain reasonable access to the northbound frontage road because they
are entitled to request, and the State would be obligated to grant, driveway
access across Parcel 9.

The
Delanys sued the State for inverse condemnation, arguing the removal of the Connector Road
resulted in substantial and material impairment of access to their property, a
compensable taking under the Texas Constitution. Experts for the State and the
Delanys agreed the property value of their land before the removal of the Connector Road was
$2.50 per square foot; the Delanys presented evidence that the property value
following removal, assuming access was unavailable, was $.25 per square foot.

The
trial court found that the Delanys had an easement of access to the Connector Road that
was destroyed by its removal. Finding that the State had “abandoned” Parcel 9,
the court found that the Delany Property was landlocked, and that alternatively
any proposed driveways across it would be unsafe. The trial court awarded as
damages $341,075 — 90 percent of the value of the land — and, after pre‑judgment
interest and $5,000 in sanctions, a total of $497,637.80.

In
this appeal,[1] the Fourteenth Court of Appeals
affirmed the trial court, holding: (1) the Delanys had a “vested easement of
access” to the Connector Road that could not be removed without compensation;
(2) the Delanys had no remaining access to the I-45 frontage road because
Parcel 9 had been abandoned; and (3) even if they did have access, it would be
unsafe and dangerous. 149 S.W.3d 655 (Tex. App.–Houston [14th Dist.] 2004).
Two members of the Court dissented from the denial of rehearing en banc.

Texas has long
recognized that property abutting a public road has an appurtenant easement of
access guaranteeing ingress to and egress from the property. See
State v. Heal, 917 S.W.2d 6, 9 (Tex.
1996); DuPuy v. City of Waco,
396 S.W.2d 103, 109 (Tex.
1965). Under the Texas Constitution, a compensable taking has occurred
if the State materially and substantially impairs access to such property. See
Santikos, 144 S.W.3d at 460. 

The
Delanys first argue their property, abutting the Connector Road
, had such an easement
guaranteeing access to that specific road. We disagree. In Texas, easements of access do not guarantee
access to any specific road absent a specific grant. See City of Houston v. Fox,
444 S.W.2d 591, 592-93 (Tex.
1969); Archenhold Auto. Supply Co. v. City of Waco, 396 S.W.2d 111, 114 (Tex. 1965).

The
Delanys next argue the 1965 Petition for Condemnation granted them access to a
specific road. Petitions for condemnation can preserve easements of access for
the remaining property of those owners whose land has been condemned. See
State v. Frost, 456 S.W.2d 245, 249, 255 (Tex. Civ.
App.–Houston [14th Dist.] 1970, writ ref’d n.r.e.); see also Coastal Indus. Water Auth. v. Celanese
Corp. of Am., 592 S.W.2d 597, 602 (Tex. 1979). However, the 1965 Petition
only stated that “roads are to be built as a part of said highway whereby the
right of ingress and egress to or from the remaining property of defendants
abutting on said highway is not to be denied.” Plainly this language only
preserves general access to I-45 (“said highway”) and did not grant anything more
specific. Thus, by virtue of the 1965 Petition, the Delanys possess a general
easement of access, and not one specific to the Connector Road
. As a consequence, we need
not consider whether the State abandoned Parcel 9 for highway purposes or
whether the Delany Property continues to abut a road; the Delanys have a
general easement regardless.   

That
said, the Delanys would be entitled to compensation if
the removal of the Connector Road
substantially and materially impaired access to their property. That is a
question of law that we review de novo.  Santikos, 144 S.W.3d
at 459, 460. 

The
evidence at trial focused on two proposed driveways that might connect the
north and south ends of the Delany Property to the I-45 frontage road — one
about 240 feet long, and the other about 580 feet long. The trial court found
the proposed driveways left “the property with an unsuitable means of access to
serve its intended purpose or highest and best use.” The intended purpose, the
trial court found, was unspecified “commercial.” But while condemned property
may be appraised at its highest and best use, Exxon Pipeline Co. v. Zwahr, 88 S.W.3d 623, 626 (Tex. 2002), remaining
property on which there are no improvements and to which reasonable access
remains, is not damaged simply because hypothetical development plans may have
to be modified. Santikos, 144 S.W.3d at 460-61.

The
Delanys are entitled only to reasonable access, not the most expansive or
expensive access their planners might design. Id. at 461. While the Delanys’ expert testified that two
separate driveways across Parcel 9 would require sharp turns and removal of a
guardrail, nothing in the record establishes that reasonable access required
these two separate driveways. See Archenhold,
396 S.W.2d at 114 (“one of two public streets may be closed without
compensation to an abutting landowner if the remaining street furnishes
suitable means of access”). As a driveway could be constructed precisely
where the Connector Road
once ran to the property, getting to it would be no more difficult along that
route than it was before. Further, nothing suggests that an exiting driveway
could not be safely constructed on the remaining several acres of flat land. 

We
agree that a different question would be presented if the State refused to
acknowledge the Delanys were entitled to an easement providing safe and
reasonable access to their property. But the State concedes it is bound to
grant them a driveway permit, a claim that remains undisputed as the Delanys
have never requested one. Accordingly, the Delanys have not, as a matter of
law, suffered material and substantial impairment of access to their property.

The
remainder of the State’s petition does not demonstrate that the court of
appeals committed any other error of law. See Tex. Gov’t Code § 22.001. Accordingly, we grant
the State’s petition for review and without hearing oral argument, Tex. R. App. P. 59.1, reverse the court
of appeals’ judgment granting the Delanys relief for impaired access and render
a take nothing judgment as to that portion only. 

 

Opinion
delivered: April 28, 2006






















[1] During the trial, the State argued on interlocutory
appeal that the Delany claims were not ripe because the State had not yet
denied these driveway permits; the First Court of Appeals rejected this
argument. See State Dept. of Transp. v. Delany,
2001 WL 493110 (Tex. App.–Houston [1st Dist.] 2001, pet. dism’d
w.o.j.).