STATE of Texas and City
of Dallas, Petitioners

v.

John C. HEAL et ux., Marie C.
Heal et al., Respondents.

No. 94–1187.

Supreme Court of Texas.

Argued March 22, 1995.

Decided Jan. 18, 1996.

Mark L. Bryza, Dallas, for Petitioners.

Douglas H. Conner, III, Eddie Vassallo, Charles A. Salazar, Dallas, for Respondents.

Justice ENOCH delivered the opinion of the Court on Motion for Rehearing. Justice ABBOTT not sitting.

The motions for rehearing are overruled. Our opinion of November 2, 1995, is withdrawn and the following is substituted in its place.

This is a condemnation case. The issue presented is whether the Heals are entitled to severance damages for the diminution in the value of the remainder of their property resulting from the widening of Southwestern Boulevard in conjunction with the North Central Expressway expansion project in the City of Dallas. Because the Heals are precluded from recovering compensation for any diminution not directly related to the taking of their property, and they have failed to establish materially and substantially impaired access, we reverse the judgment of the court of appeals and remand to the trial court for further proceedings.

In 1989, the State of Texas condemned 436 square feet of John and Marie Heal's residential lot in order to widen Southwestern Boulevard where that street approached its intersection with North Central Expressway. The Heals' lot is the third lot west of that intersection on the south side of Southwestern Boulevard. According to the State,[1] Southwestern Boulevard is being widened as it approaches the southbound service lane of the Expressway to allow the intersection to align with a new and larger bridge that will be built over North Central. Southwestern will not be widened west of the Heals' property, but rather the widened portion will narrow in front of the Heals' property to the street's original configuration.

In conjunction with this project, the State will erect a barrier wall adjacent to the residential area along the southbound service lane of the Expressway between Southwestern Boulevard and Lovers Lane to reduce noise affecting residents on the interior streets. Lovers Lane is the next main thoroughfare south of Southwestern. The interior streets which once fed onto the southbound service road will be closed off. Therefore, the only means by which residents on these streets may access southbound Central Expressway will be by either Southwestern or Lovers Lane via a local cross street.

After the State announced its plan to widen Southwestern, special commissioners were appointed to hear the State's petition for condemnation. The Heals appealed the commissioners' award in the county court at law, claiming damages for the State's taking of their property and the diminution in value of the remaining lot because the condemnation will cause more traffic and a bottleneck which will impair access. The trial court admitted evidence over the State's objection regarding its decision to barricade the interior streets between Southwestern and Lovers Lane and traffic projections for Southwestern and Lovers Lane for the year 2010. The jury found that the value of the 436 square feet taken was $6,853, and that the diminution in value to the remainder of the property was $43,147. The State did not contest the finding with respect to the value of the property taken, but appealed the finding of damages to the remainder. The court of appeals affirmed the trial court's judgment. 884 S.W.2d 864.

---

1. The City of Dallas filed a brief with this Court in which the City indicated that it was pursuing the appeal on its own and the State's behalf.

The City and the State will be collectively referred to as "the State."

## I. Compensable Damages

■ We must first address the State's contentions that, as a matter of law, the Heals are not entitled to compensation for the damages they have alleged. Section 21.042(c) of the Property Code provides:

If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner ... including the effect of the condemnation on the value of the property owner's remaining property.

Initially, the State argues that the rule set out in *Campbell v. United States*, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924), bars the Heals from recovering severance damages. *Campbell* held that compensation for a taking should not include damages to the remainder caused by the acquisition and use of adjoining property. *Campbell*, 266 U.S. at 372, 45 S.Ct. at 116–17. We adopted the *Campbell* rule in *State v. Clark*, 161 Tex. 10, 336 S.W.2d 612, 618 (1960). *State v. Schmidt*, 867 S.W.2d 769, 778 (Tex.1993). We noted, however, that the *Campbell* rule had a necessary qualification. The *Campbell* rule controls unless:

(1) the land taken from the condemnee landowner was indispensable to the ... project; (2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project; and (3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the ... project.

*Schmidt*, 867 S.W.2d at 778 (quoting *United States v. 15.65 Acres of Land*, 689 F.2d 1329, 1332 (9th Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983)). In considering the Heals' damages, then, only the diminution in value of the remainder caused by taking 436 square feet of their property is considered, not the diminution caused by the Central Expressway project as a whole, unless the qualification is met. *Campbell*, 266 U.S. at 372, 45 S.Ct. at 116–17; *Schmidt*, 867 S.W.2d at 777–79; *Clark*, 336 S.W.2d at 618. For example, in holding against the property owners in *Schmidt*, we explained:

In the present case it is clear that the diminution in value claimed by Schmidt and Austex in their remaining property is due entirely to the State's modifications to Highway 183 and not to the use of the strip taken from each tract. The diversion of traffic, circuity of travel, and impaired visibility are all attributable to the conversion of Highway 183 to a controlled access highway. This conversion is to be accomplished, not on the small strips taken from the Schmidt and Austex tracts, but by changes in the entire roadway.

867 S.W.2d at 778.

Had the Heals sought damages merely for increased traffic, increased noise, and the overall impact of the Central Expressway project, their claims would be precluded. *Campbell*, 266 U.S. at 372, 45 S.Ct. at 116–17; *Schmidt*, 867 S.W.2d at 777–79. The Heals, however, also specifically seek compensation for the diminution in value of their property caused by the impaired access they assert will occur from the increased traffic and bottleneck. This type of damage is not necessarily attributable to the use of adjoining property in the sense contemplated by *Campbell*. To hold that *Campbell* governs in this case would be inconsistent with our prior decisions which are discussed below. In many of these cases, the impairments to access were caused by the use of adjoining lands. Although applicable under other circumstances, we have never considered *Campbell* to preclude recovery for impaired access.

■ As a second contention, the State asserts that the Heals have sustained only "community injuries," which are not compensable. *Schmidt*, 867 S.W.2d at 779. Regarding the difference between community and special damages, the Texas Property Code states:

In estimating injury or benefit [arising from a condemnation], the special commissioners shall consider an injury or benefit that is peculiar to the property owner and that relates to the property owner's ownership, use, or enjoyment of the particular parcel of real property, but they may not consider an injury or benefit that the prop-

erty owner experiences in common with the general community.

Tex.Prop.Code § 21.042(d).

■ The State argues that any increased traffic contributing to the bottleneck affects the entire neighborhood, and thus the damages are community injuries. However, the State makes the mistake of concentrating on the location rather than the nature of the injury. The concept of community injury is not primarily geographical. *Schmidt,* 867 S.W.2d at 781. The focus should be on the nature of the injury.

■ Impaired access is not a community injury. In *Texarkana & N.W. R.R. v. Goldberg,* 68 Tex. 685, 5 S.W. 824 (1887), we wrote:

> The fact that the injury was common to all other property holders on the street would not bar the plaintiff's right of recovery. The plaintiff sues for a special damage to his own property by reason of defendant's having impaired the use of the street upon which it fronts.

*Id.* at 826. Thus, impaired access is different than mere circuity of travel and is a compensable special damage. *Schmidt,* 867 S.W.2d at 774. Our subsequent cases addressing damages for impaired access also recognize that this is a special injury. *Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965); *DuPuy v. City of Waco,* 396 S.W.2d 103, 110 (Tex.1965).

## II. Impairment of Access

■ Whether property has been "damaged" under the constitution is a question of law. *Westgate, Ltd. v. State,* 843 S.W.2d 448, 452 (Tex.1992); *City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 804 (Tex. 1984); *DuPuy,* 396 S.W.2d at 110. Likewise, whether access rights have been materially and substantially impaired is a question of law. *Schmidt,* 867 S.W.2d at 777; *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988); *City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969); *DuPuy,* 396 S.W.2d at 110. "It is incumbent upon the trial court to make this determination prior to trial and to control the admission of evidence accordingly." *Wood Oil,* 751 S.W.2d

at 865. Although *Schmidt, Wood Oil, Texland,* and *DuPuy* involve inverse condemnation, the same rules apply to condemnation proceedings as apply in inverse condemnation proceedings. *Schmidt,* 867 S.W.2d at 777.

■ The result in this case, thus, turns on whether the Heals have established that their access rights have been impaired to the extent that their property has been "damaged" under Article I, Section 17 of the Texas Constitution. To permit recovery, the trial court must first determine that access rights have been materially and substantially impaired. This threshold determination is not specifically found in the record, however, it was impliedly made because the trial court submitted damages issues to the jury. Conclusions of law which are necessary, but not made, are deemed in support of the judgment. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992); *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980).

■ The State challenges the trial court's determination that the Heals' remainder incurred constitutional damages. We review questions of law without deference to a lower court's conclusion. *Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d 447, 450 (Tex. 1995); *In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994); *see Richards v. Lulac,* 868 S.W.2d 306, 310–12 (Tex.1993).

> The Texas Constitution provides:
>
> No person's property shall be taken, *damaged* or destroyed for or applied to public use without adequate compensation being made. . . .

Tex. Const. art. I, § 17 (emphasis added). In *DuPuy v. City of Waco,* this Court held:

> It is the settled rule in this state that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage [under Article I, Section 17 of the Texas Constitution].

396 S.W.2d at 108. We concluded that a landowner is entitled to compensation when a public improvement destroys all reasonable

access, thereby damaging the property. *Id.* at 109. We also recognized that no right to compensation extends to a property owner who has *reasonable* access to his property after the construction of the public improvement because the benefits of private ownership have been preserved. *Id.* Although *DuPuy* involved commercial property, there is no compelling reason, under the facts of this case, for formulating a different test for evaluating impaired access of residential property.

*DuPuy* is the seminal case on impaired access damages. It involved the construction of a viaduct that left the landowner without any reasonable access to his property because, consistent with the construction arrangement, the street on which DuPuy's property fronted was barricaded, thus leaving him in a cul de sac. *Id.* at 110 (citing *Lee v. City of Stratford,* 125 Tex. 179, 81 S.W.2d 1003 (1935), for the proposition that a property owner left in a cul de sac after a public improvement is entitled to compensation). Prior to the viaduct's construction, DuPuy's property fronted on a well-travelled street and was fully accessible. Afterward, DuPuy could access his property only by traversing underneath the viaduct, between the support columns and dead-ending at his property. *Id.* at 104. We concluded these facts indicated that all reasonable access had been denied, when compared to the pre-construction route, even though DuPuy could still physically get to the system of public roads from his property.

■ Several years later, we gave greater definition to the rule by holding that a landowner could recover compensation whenever access is "materially and substantially impaired." *Texland,* 446 S.W.2d at 2. We held that the construction of a viaduct constituted materially and substantially impaired access by reducing the clearance and making it "difficult" and "almost impractical" to bring trucks onto the property. *Id.* at 4. The "material and substantial" test of *Texland* and the "no reasonable access" test of *DuPuy* are quite similar and can be reconciled by considering the fact specific problem in *Texland,* which necessitated the articulation of a more exact test. *Texland* involved a

company in the business of warehousing. The company's warehouse was located beneath a recently constructed viaduct. The viaduct was supported by piers which were located close to the warehouse. One pier was even located directly in front of the loading dock. Several witnesses testified that the location of the piers created a serious interference. As the company was in the business of warehousing and transporting stored goods, which necessarily involved large commercial delivery trucks, these piers severely impeded the trucks' maneuverability with respect to backing up and parking. *Id.* The lack of maneuverability reached such a level that the warehouse was virtually unusable for its intended purpose because trucks capable of transport could not access the premises. Therefore, we further articulated the *DuPuy* test to acknowledge situations where *normal* access remained reasonably available, but access for which the property was specifically intended was rendered unreasonably deficient.

Another case illustrating the circumstances necessary before compensation for impaired access is required is *City of Beaumont v. Marks,* 443 S.W.2d 253 (Tex.1969). In *Marks,* we held that a railroad grading project impaired access to property. The property fronted on Orleans Street, a one-way street running north, and Gilbert Street, a two-way street running east and west. A single railroad track ran along the middle of Gilbert Street. The city expanded the existing railroad tracks, and rerouted Orleans Street to proceed underneath the railroad tracks, thus forming "new" Orleans. Although "old" Orleans still intersected Gilbert Street at the corner where Marks' property was located, Orleans remained one-way and terminated at, rather than crossed, Gilbert. Additionally, the Gilbert roadway was narrowed considerably to allow another railroad track. These changes caused Marks' property to experience considerable access problems.

One of the problems created was the narrow turning radius at the corner of "old" Orleans and Gilbert, such that large trucks necessary to the business of warehousing and transporting could not negotiate the turn.

*Id.* at 256. If a vehicle reached the intersection and discovered it could not negotiate the turn, its driver was put in a precarious situation as "old" Orleans remained one way, thus preventing the driver from reversing his path of travel. Further, vehicles had difficulty maneuvering along Gilbert Street because each lane was now only 10 feet wide. But more importantly, vehicles could not safely traverse Gilbert when a train was on the south track. *Id.* Similar to *Texland,* the reconfiguration of the roadway in *Marks* created a virtually impassable obstruction which entitled Marks to compensation. The plaintiff and his customers' automobiles could still access the property, provided, (1) no train was on the tracks, (2) no car was parked on Gilbert Street, and (3) they were not driving a large truck and needed to turn onto Gilbert from Orleans.

Although the Heals' complaint of impaired access tangentially involves aspects of the previously discussed cases, the present case is more akin to the conceptual reasoning of *Archenhold Auto. Supply Co. v. City of Waco,* a case in which one means of access was completely impaired while another remained open. 396 S.W.2d at 114. There we held that damages for *diminishment* of the means of access is not compensable provided suitable access remains. *Id.* We decided *Archenhold* before we replaced the *DuPuy* test for impaired access with the *Texland* "material and substantial" impairment test. However, because *Texland* merely enunciated a more exact test, we are convinced that the same outcome would have been reached in *Archenhold* had the more exact test been used. As it was in *Archenhold,* so it is in the present case. For reasons we discuss below, we conclude that the Heals are not entitled to additional compensation because their access rights will not be materially and substantially impaired.

A review of the record shows that the Heals will not experience materially and substantially impaired access. The Heals' value expert, Leon Hurse, offered evidence demonstrating that the new configuration might create some confusion, be more hazardous, and result in more difficulty in turning left into the Heals' driveway because of increased traffic and the bottleneck that would form in front of their property. To bolster Hurse's conclusion, the Heals introduced the North Central Expressway Cross Street Operational Analysis into evidence, which reflected that traffic could increase up to 60% after completion of the project. While this may be evidence of inconvenience, it does not constitute material and substantial impairment.

All of our prior impaired access cases involved physical obstructions created by a public improvement. Here, the Heals allege that traffic will impair their access. The primary factual difference is that traffic will fluctuate—at times there will be congestion and at other times there will be free access. And even when there is congestion, access is not materially and substantially denied. Nevertheless, at this time we need not hold, as a matter of law, that traffic can never materially and substantially impair access such that a constitutional taking or damaging occurs. Rather, we hold only that, under these facts, traffic will not impair the access to the Heals' property enough to justify severance damages.

## III. Conclusion

The Heals may not recover compensation from the State for the diminution in value of their remaining property not directly attributable to the taking of their property. This includes the Heals' alleged noise damages and other damages incident to the overall effect of the North Central Expressway project. We also hold that the evidence of traffic congestion contained in the record does not establish that the Heals' access rights have been materially and substantially impaired. Therefore, the Heals are not entitled to compensation even if the remainder of their property has lost some degree of value. Accordingly, we reverse the judgment of the court of appeals and remand to the trial court for proceedings consistent with this opinion.[2]

2. Although the record would otherwise support a

rendition of judgment, the State sought only a

remand from this Court and thus, is entitled only to a remand and not a rendition. Additionally, because we hold that the Heals are not entitled to severance damages, we do not reach the issues

concerning whether the tax notice evidencing the current value of their property or whether the traffic projections for Southwestern were admissible.