COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| NANCY L. ELLITHORP, | § | No. 08-06-00249-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 388th Judicial District Court |
| | § | |
| GARY D. ELLITHORP, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 94-8290) |
| | § | |
| | § | |

**O P I N I O N**

This appeal is from the denial of Appellant Nancy Ellithorp's motion to register and enforce a West Virginia child support order. In three issues, Ms. Ellithorp argues the trial court's refusal to register the foreign order was error. In Issues One and Two, she asserts the trial court violated the Uniform Interstate Family Support Act by determining the Texas divorce decree and child support order was the "controlling order," and Texas the state of continuing, exclusive jurisdiction. In Issue Three, Ms. Ellithorp contends that by refusing to register and enforce the West Virginia order, the trial court violated the full faith and credit clause of the U.S. Constitution. We reverse and remand.

Gary and Nancy Ellithorp were married in Ohio in 1980. During the marriage, they had two children: John and Daniel. In 1990, the family moved to West Virginia where they resided until Mr. Ellithorp joined the armed forces in 1993.[1] When the parties separated in May of 1994,

---

[1] Ms. Ellithorp and the two children have continued to reside in West Virginia at all times pertinent to this appeal. Mr. Ellithorp continues to reside in Texas.

Mr. Ellithorp was stationed in El Paso, Texas at Fort Bliss.  Ms. Ellithorp filed for divorce in Putnam County, West Virginia on July 21, 1994.  Mr. Ellithorp filed a divorce petition in El Paso County, Texas on July 26, 1994.  On September 15, 1994, Ms. Ellithorp appeared in the Texas divorce proceeding by letter to the trial court indicating that she had filed in West Virginia five days before the Texas proceeding was instituted.

Mr. Ellithorp was served through the West Virginia Secretary of State's office on July 21, 1994.  There is no record that he filed an answer in the West Virginia Circuit Court.  On October 14, 1994, the family law master presiding over the West Virginia divorce notified the Texas court by letter that Ms. Ellithorp's petition was filed five days prior to Mr. Ellithorp's, and asking if Texas intended to exercise jurisdiction over the case.  The associate judge presiding over the Texas case responded by informing the West Virginia court that Texas intended to exercise jurisdiction over the case.  Following Texas's assertion of jurisdiction, the West Virginia family law master recommended dismissing the cause.  Ms. Ellithorp filed exceptions to the master's recommendations on November 16, 1994.

In December 1994, the Texas case proceeded to hearing where Ms. Ellithorp failed to appear.  The associate judge's recommendations following the Texas hearing included a statement that the final divorce be effective December 30, 1994.  In the Texas divorce decree, the Ellithorps were appointed joint managing conservators of the children, Ms. Ellithorp was appointed managing conservator, Mr. Ellithorp was granted access pursuant to a standard possession order, and ordered to pay $400 a month in child support.  The associate judge also made recommendations regarding the community property of the marriage.  The district court adopted the associate judge's recommendations, and entered judgment in Texas on January 13,

1995. The decree states it was effective on December 30, 1994.

During the same period, the Texas case was proceeding to judgment, the West Virginia case proceeded on a parallel track. In West Virginia, the family law master held a hearing on January 3, 1995. A final divorce order was entered in West Virginia on May 11, 1995. Mr. Ellithorp did not appear in the West Virginia proceeding. The West Virginia order purports to be effective from December 22, 1994, prior to the January 3 hearing. Under the West Virginia order, Ms. Ellithorp received custody of the children and was awarded $591.67 per month for child support and an additional $400 per month for spousal support.

Over the next two years, the parties filed various motion for enforcement of the separate orders. On February 3, 1997, the parties entered into an agreed order in West Virginia. This was the first time in the two cases that both Mr. and Ms. Ellithorp appeared in the same forum. Pursuant to the agreed order, the Texas decree was entered of record in West Virginia along with a Texas enforcement order which had been entered on May 30, 1996. The agreed order purported to dismiss the Texas case and "ratified" and "confirmed" the West Virginia divorce order as the final order of divorce in the case. The agreed order was bifurcated, specifying that the paragraphs dealing with Mr. Ellithorp's child support and alimony obligations, the provision of medication insurance, and distribution of marital property and debts had only temporary effect until such time as the West Virginia Court entered final orders on those issues. The West Virginia Circuit Court entered a final order encompassing the agreed order on May 11, 1995.

Several years later, possibly in response to an enforcement action filed by the West Virginia Bureau for Child Support Enforcement, Mr. Ellithorp filed a special appearance, contending he was not subject to personal jurisdiction in West Virginia. He also argued that the

Texas District Court continued to have jurisdiction over the case regardless of the 1997 agreed order. Ultimately, the West Virginia Supreme Court denied Mr. Ellithorp's special appearance, holding the State did not have personal jurisdiction over Mr. Ellithorp until he submitted to jurisdiction in 1997 with the entry of the agreed order. *Ellithorp v. Ellithorp*, 575 S.E.2d 94, 105 (W.Va. 2002).

While Mr. Ellithorp was arguing his special appearance in West Virginia, Ms. Ellithorp filed her own special appearance in Texas in response to Mr. Ellithorp's continued efforts to enforce the Texas support order and halt wage withholding. On May 6, 2002, the Texas district court denied Ms. Ellithorp's special appearance finding it was not timely filed. She did not appeal the district court's ruling.

The West Virginia Circuit Court entered a "Corrected Final Order" implementing the Supreme Court of Appeals' decision on September 17, 2004. Again, Mr. Ellithorp did not appear, despite notice. On October 21, 2004, Ms. Ellithorp filed a petition to register and enforce the 2004 West Virginia judgment in Texas. Mr. Ellithorp contested the petition, arguing the 1995 Texas divorce decree was the "controlling order" under the Uniform Interstate Family Support Act (UIFSA). The Texas District Court agreed with Mr. Ellithorp's argument and denied Ms. Ellithorp's petition on August 21, 2006. This appeal followed.

In Issues One and Two, Ms. Ellithorp argues the trial court erred in determining the Texas divorce decree was the controlling order for UIFSA purposes and thereby denying her motion to register and enforce the West Virginia support order. Ms. Ellithorp's argument is essentially a challenge to the trial court's legal conclusion that the Texas order is the "controlling order" pursuant to TEX.FAM.CODE ANN. § 159. We review a trial court's legal conclusions *de novo*.

-4-

*State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).

Ms. Ellithorp contends that the trial court's legal conclusion was in error because under the Uniform Interstate Family Support Act (UIFSA) both Texas and West Virginia had continuing, exclusive jurisdiction over the child support order, and as West Virginia is the "home state" of the child at issue, the West Virginia support order controls. Mr. Ellithorp counters by arguing that Texas is the only state with continuing, exclusive jurisdiction, and therefore, the trial court was correct in holding the Texas order controls.

UIFSA provides a procedure for the registration of interstate support orders. *See* TEX.FAM.CODE ANN. § 159.602 (Vernon Supp. 2008). Once registered, such a support order is enforceable in the same manner and subject to the same procedures as an order issued by a Texas tribunal. TEX.FAM.CODE ANN. § 159.603(b)(Vernon 2002). Should the non-registering party wish to contest the validity or enforce ability of the order that party may raise one or more of eight statutory defenses: (1) the issuing tribunal lacked personal jurisdiction over the contesting party; (2) the order was obtained by fraud; (3) the order has been vacated, suspended, or modified by a later order; (4) the issuing tribunal has stayed the order pending appeal; (5) there is a defense under the law of this state to the remedy sought; (6) full or partial payment has been made; (7) the statute of limitations under Section 159.604 precludes enforcement of some or all of the alleged arrearages; or (8) the alleged controlling order is not the controlling order. TEX.FAM.CODE ANN. § 159.607(a)(Vernon Supp. 2008).

In this case, Mr. Ellithorp contested the West Virginia judgment's registration on the basis that it was not the "controlling order" and therefore not entitled to registration. The trial court agreed and concluded as a matter of law that the 1995 Texas order was the controlling

order in the case. In a case such as this one, where two or more child support orders have been issued with regard to the same obligor and the same child or children, Section 159.207(b) provides the mechanism to determine which order should be given priority. *See* TEX.FAM.CODE ANN. § 159.207(b)(Vernon Supp. 2008). First, if only one of the competing tribunals has "continuing, exclusive jurisdiction" as defined by the act that order controls. TEX.FAM.CODE ANN. § 159.207(b)(1). In a case where more than one jurisdiction has "continuing, exclusive jurisdiction," the order issued by the current home state of the child controls or if an order has not been issued in the child's current home state, the most recent order controls. TEX.FAM.CODE ANN. § 159.207(b)(2). Finally, in a case where no tribunal would have continuing, exclusive jurisdiction, the Texas tribunal "shall issue" a controlling order. TEX.FAM.CODE ANN. § 159.207(b)(3).

Based on the language of Section 159.207, we must first determine whether Texas, West Virginia, or both, had continuing, exclusive jurisdiction. "Continuing, exclusive jurisdiction" is defined by two correlative sections of the act. Section 159.205 defines continuing, exclusive jurisdiction for modification purposes, while Section 159.206 defines continuing, exclusive jurisdiction for enforcement. *See* TEX.FAM.CODE ANN. § 159.205 and 159.206.

(a)  A tribunal of this state that has issued a child support order consistent with the law of this state may serve as an initiating tribunal to request a tribunal of another state to enforce:
(1)  the order, if the order:

(A)  is the controlling order; and

(B)  has not been modified by a tribunal of another state that assumed jurisdiction under the Uniform Interstate Family Support Act; or

      (2)     a money judgment for support arrearages and interest on the order accrued before a determination that an order of another state is the controlling order.

TEX.FAM.CODE ANN. § 159.206(a).

While the continuing, exclusive jurisdiction determination in this case is based primarily on Section 159.206, as it is a proceeding for enforcement, we will read this section in conjunction with Section 159.205, for additional guidance. *See* TEX.FAM.CODE ANN. § 159.206 (official comment to UIFSA Section 206 - identifying Section 206 as "correlative of the continuing, exclusive jurisdiction," of Section 205, and noting the "relatively subtle distinction between the continuing, exclusive jurisdiction to modify a support order" and the "continuing, exclusive jurisdiction to enforce").

In the case of the Texas order, there has been no argument that the entry of the 1995 support order was inconsistent with the laws of this State, and the record indicates that Mr. Ellithorp, the obligor in this case is a resident of Texas. Therefore, Texas meets the requirements for continuing, exclusive jurisdiction under Section 159.205(a)(1). Under the same requirements however, West Virginia also has continuing, exclusive jurisdiction. Mr. Ellithorp has not challenged the legality of the West Virginia support order beyond his appeal challenging West Virginia's ability to assert personal jurisdiction over him in the years prior to the agreed order, signed in 1997. That issue has been disposed of by the West Virginia Supreme Court of Appeals, leaving the most recent West Virginia support order in effect from 1997 forward. *See Ellithorp*, 575 S.E.2d at 105 (while West Virginia did not have personal jurisdiction over Mr. Ellithorp prior to the agreed order, prospectively from the entry of that order West Virginia had jurisdiction to enforce support orders). West Virginia is also the home of the obligee,

-7-

Ms. Ellithorp and the child for whose support the orders were issued. As such, West Virginia also has continuing, exclusive jurisdiction.

Having determined that more than one tribunal has continuing, exclusive jurisdiction in this case, we must now look to sub-paragraph (b)(2) of Section 159.207 to determine which is the controlling order. *See* TEX.FAM.CODE ANN. § 159.207(b)(2). Because West Virginia is the home state of the child for whose support these orders have been issued, the West Virginia order is the controlling order. *See* TEX.FAM.CODE ANN. § 159.207(b)(2)(A). Therefore, the trial court's conclusion that the Texas order is the controlling order was in error. Issues One and Two are sustained.

Having sustained Issues One and Two, the trial court's judgment is reversed and the case remanded for registration and confirmation of the West Virginia order.

January 15, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J. (Not Participating)