**WILBERT FAMILY LIMITED PARTNERSHIP and Central Hardwoods, Inc., Appellants,**

v.

**DALLAS AREA RAPID TRANSIT, Appellee.**

No. 05–10–01240–CV.

Court of Appeals of Texas, Dallas.

May 23, 2012.

Rehearing Overruled Aug. 2, 2012.

Emery Lawrence Vincent, Joe H. Staley, Law Office of Joe H. Staley, Jr., PC, Dallas, TX, for Appellants.

Harold R. McKeever, Jr., Joycell Marie Hollins, Dallas, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice FRANCIS.

Wilbert Family Limited Partnership and Central Hardwoods, Inc. appeal the trial court's summary judgment in favor of Dallas Area Rapid Transit. In three issues, appellants claim the trial court erred in granting summary judgment because DART failed to establish as a matter of law their claims were barred by limitations, access to their property was not materially and substantially impaired by the loss of heavy rail access, and appellants' federal law claims should have been dismissed. We sustain the second issue and reverse the trial court's judgment and remand for further proceedings.

WFLP owns real property located at 2605 Rodney Lane in Dallas. A City of Dallas zoning exception allowed for a planning mill and wood fabricating facility on the WFLP property that accessed heavy rail tracks, turnout and spur served by the Dallas, Garland & Northeastern Railroad. The heavy rail, turnout and spur were located and permanently affixed to the land long before Wilbert acquired the property in the 1960s. The turnout and spur were located on WFLP property; the main rail tracks were adjacent to the property. WFLP leased the property to CHI for its lumber and wood products business. The property housed CHI's warehouse offices, lumberyard, specialty products facilities, and planning mill.

CHI imported products from sawmills and manufacturers around the world with most products arriving at CHI's warehouse by rail. CHI, who considered the direct rail access "critical" to its ability to "provide a high level of service for its customers" and "maintain the depth and breadth of its specialty inventory," cited the direct railway access as one of the primary reasons it leased the property from WFLP. This, along with the zoning exception, gave CHI a competitive marketing advantage.

DART purchased the MKT/UP rail line between Dallas and Denton to facilitate construction of DART's light rail in the corridor. In 2002, DART notified appellants that CHI's deliveries by rail access would be impacted by DART's plans to build the "Green Line" light rail service. More specifically, DART intended to dismantle the portion of the freight line servicing CHI. Knowing CHI was by far the heaviest user of the rail service on the line and that CHI would be adversely impacted by the elimination of rail service, DART staff and consultants met with CHI to identify all options available to allow CHI to continue its operations without direct heavy rail service. These included: relocating CHI to a new location, converting CHI from rail to trucking, constructing new comparable trackage, leasing a facility to receive and transfer products to trucks, or compensating appellants with a one-time lump sum payment representing the present value of the increased costs to operate over a period of years.

In early 2007, DART removed the heavy rail trackage adjacent to WFLP and DART agents went on WFLP property and removed the railroad turnout and

spur. DART's construction created periods of "temporary and total denial of heavy rail access" to the property and prevented deliveries to CHI. Appellants provided DART with evidence of the "devastating effects" CHI was experiencing from the lack of rail service. DART led appellants to believe it was dealing in good faith to arrange for comparable tracks to serve the location, to locate and underwrite a new comparable facility, or compensate appellants for the damages it was causing. As negotiations proceeded, however, the costs of providing alternatives proved greater than anticipated. In November 2009, after seven years of negotiation, DART ceased discussions with appellants, stating it had no legal responsibility for compensation or relocation.

Appellants sued DART for inverse condemnation based on denial of access due to the removal of the main tracks, the turnout and spur. In their petition, appellants claimed these actions caused partial temporary restrictions of rail access and, later, permanent denial of heavy rail access and all direct rail freight service as guaranteed by federal law under 49 U.S.C. § 11101 ("A rail carrier providing transportation or service … shall provide the transportation or service on reasonable request."). Although the rail access was not the only means of accessing the property, it was the primary manner in which appellants received all materials used in their operations. Appellants alleged DART's taking resulted in lost profits as well as diminution of the value of their real property. Additionally, appellants asserted DART's actions constituted a knowing disregard of appellants' constitutional rights, entitling them to recover under the provisions of 42 U.S.C. § 1983. After DART answered, appellants filed a motion for partial summary judgment on the sole issue of whether a taking had occurred, leaving the issue of damages for the inverse condemnation claim for trial. The trial court denied appellants' motion.

Thereafter, DART filed a motion for traditional summary judgment on the grounds appellants' claims were barred by limitations, access to their property was not materially and substantially impaired by the loss of heavy rail access, and appellants' federal law claims were premature should be dismissed. Specifically, DART alleged appellants' 2007 injury was not a taking but rather a trespass or damage to property. Under this reasoning, DART argued the two-year statute of limitations applied (rather than the ten-year statute of limitations applied to takings claims) and appellants' suit, filed on March 8, 2010, was barred by limitations. DART argued appellants' federal claims were premature "until the party first resorts to the state law procedure" and should be denied. The trial court granted the motion without stating the ground for doing so.

In three issues, appellants claim the trial court erred in granting summary judgment. Appellants contend DART failed to establish as a matter of law that (1) their claims were barred by limitations, (2) access to their property was not materially and substantially impaired by the loss of heavy rail service and removal of the rail turnout and spur affixed to appellants' land, and (3) appellants' federal law claims should have been dismissed. The limitations and federal law issues turn on the resolution of the takings claim so we address that first.

■■■ We review de novo the trial court's granting of a motion for traditional summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 1017, 178 L.Ed.2d 829 (2011). When reviewing a summary judgment, we take as true all evidence favorable to the non-

movant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). We will affirm a summary judgment if the record establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003). For a defendant to prevail on a traditional motion for summary judgment, it must either disprove at least one element of each of the plaintiff's claims as a matter of law or conclusively establish all elements of an affirmative defense to the claims. *Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 282 (Tex.1996); *Wilcots v. Wiggins,* 306 S.W.3d 947, 949 (Tex.App.-Dallas 2010, no pet.). If the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999).

The Fifth Amendment grants a landowner the right to seek compensation from the government for land that it takes. *See* U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation."). Likewise, the Texas Constitution provides, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." TEX. CONST. art. I, § 17. To establish an inverse condemnation claim, a claimant must demonstrate the government intentionally performed certain acts that resulted in the taking, damaging, or destruction of the claimant's property for public use. *Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.,* 282 S.W.3d 59, 61 (Tex.2009). A physical taking may occur when the government physically appropriates or invades private property, or unreasonably interferes with the landowner's right to use and enjoy it, such as by restricting access. *Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 554 (Tex.2004); *Westgate, Ltd. v. State,* 843 S.W.2d 448, 452 (Tex.1992). "[P]roperty has been damaged for a public use within the meaning of the Constitution when access is materially and substantially impaired even though there has not been a deprivation of all reasonable access...." *City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969). The "materially and substantially impaired test" acknowledges situations in which "normal access remained reasonably available, but access for which the property was specifically intended was rendered unreasonably deficient." *State v. Heal,* 917 S.W.2d 6, 10 (Tex.1996).

In support of its motion for summary judgment, DART attached two affidavits and a portion of deposition testimony. William T. Stinson, a construction engineering manager for DART, testified by affidavit that the light rail construction adjacent to appellants' property required the removal of the heavy rail tracks but that "track removal should have been limited to DART's right of way and should not have included any tracks that were located on property of others, unless it was with the permission of the owner." Stinson outlined the road access available to the property during construction and after the removal of the main track, turnout and spur and concluded, "Access to the Wilbert property was never materially or substantially impaired."

■ Although Stinson's conclusory statements address street access around appellants' property, his affidavit does not address appellants' claim that access was materially and substantially impaired with respect to the heavy rail when all heavy rail access to the property was removed. Stinson does not address appellants' claim they were denied access to deliveries of their lumber or wood products, the vast majority of which were by rail nor does it address the adequacy of other modality as a substitute. Stinson does not respond to appellants' claim that the property taken included the vested right to railroad service given by federal statutory law. Further, Stinson's statement that DART "should" not remove property conflicts with what actually occurred in this case— that DART took the turnout and spur affixed to appellants' real property.

In addition to Stinson's affidavit, DART offered Joseph P. Wilbert, Jr.'s affidavit and a portion of his deposition testimony. This evidence showed appellants were denied heavy rail service and suffered damages as a result. DART's summary judgment evidence did not establish DART was entitled to summary judgment as a matter of law, and the trial court erred in granting summary judgment on this ground. We sustain appellants' second issue. In light of our disposition of this issue, we need not address appellants' remaining issues. See TEX.R.APP. P. 47.1.

We reverse the trial court's order granting summary judgment and remand this case to the trial court for further proceedings consistent with this opinion.