**Reversed and Rendered and Memorandum Opinion filed January 24, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00903-CV

---

### CITY OF HOUSTON, Appellant

### V.

### YOUNG SONG AND GINGER SONG D/B/A WHEELBURGER, GENE NAZLANKIN D/B/A SILBER ROAD AUTO, AND WORLD CATERING, INC., Appellees

---

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 994712**

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, the City complains that the trial court erred in denying the City's plea to the jurisdiction because appellees have not alleged an inverse condemnation claim for which governmental immunity has been waived and do not have standing to seek injunctive relief based on the City's construction

of medians within a public roadway near appellees' businesses. Because appellees' claims are barred by governmental immunity, we conclude the trial court erred in denying the City's plea to the jurisdiction. We reverse and render judgment dismissing appellees' claims against the City for want of jurisdiction.

## Background

Appellees own three businesses located on Silber Road near the intersection of Northampton Way and across the street from a Walmart store in Houston, Texas. In August 2010, Walmart submitted a development plan to the City's engineer's office proposing to construct medians on Silber Road near the entrance to the Walmart store. The plan was approved, and the medians were constructed around May 2011. The medians prohibit northbound traffic from turning left onto Northampton Way or into appellees' driveways. Appellees' businesses may no longer be accessed from that route; however, alternative routes are available to reach each of appellees' businesses.

Symonds Investment Company owns property on Northampton Way. Symonds filed suit against the City in June 2011, alleging the medians "caus[ed] partial and permanent restriction of access to [Symonds's] properties . . . result[ing] in a taking of private property for public purpose without compensation" and seeking injunctive relief or, in the alternative, monetary damages. The petition filed by Symonds was supplemented six times, and each appellee joined the lawsuit. The fourth supplemental petition additionally alleged that construction of the medians "creat[ed] a material and substantial impairment of access to the [subject] properties." The sixth supplemental petition added a nuisance claim. The City filed a plea to the jurisdiction asserting governmental immunity for the inverse condemnation claim and lack of standing for injunctive relief. After a hearing, the trial court granted the plea to the jurisdiction only as to

2

Symonds, and denied the plea as to appellees.[1]  The City filed this interlocutory appeal pursuant to Civil Practice and Remedies Code section 51.014(a)(8).  *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012) ("[A] governmental entity may challenge the denial of a plea to the jurisdiction in an interlocutory appeal.") (citing Tex. Civ. Prac. & Rem. Code § 51.014).

## Discussion

The City argues that (1) appellees did not allege a compensable inverse condemnation claim against the City for which governmental immunity would be waived; (2) undisputed facts establish that the medians did not cause material and substantial impairment to appellees' properties as required for an inverse condemnation claim; (3) appellees' nuisance claim is subsumed into their takings claim because both claims are based on the same underlying facts; and (4) appellees lack standing to seek injunctive relief because they assert only a generalized grievance.

Generally, a governmental entity such as the City of Houston is immune from tort liability.  *City of Galveston v. State*, 217 S.W.3d 466, 468 (Tex. 2007).  Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction.  *See Univ. of Texas M.D. Anderson Cancer Ctr. v. Baker*, 14-11-01037-CV, 2012 WL 6014608, at *2 (Tex. App.—Houston [14th Dist.] Dec. 4, 2012, no. pet. h.).  A plea challenging the trial court's jurisdiction raises a question of law that is reviewed de novo.  *Johnson v. City of Bellaire*, 352 S.W.3d 260, 263 (Tex. App.—Houston [14th Dist.] 2011, pet. filed).  We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W. 3d 217, 226 (Tex. 2004).  We construe

---

[1] Symonds is not a party to this appeal.

3

the pleadings liberally in favor of the plaintiffs, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.* The allegations found in the pleadings may affirmatively demonstrate or negate the court's jurisdiction. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009).

## I. Governmental Immunity from Inverse Condemnation and Nuisance Claims

In its first issue, the City argues appellees did not allege facts establishing a valid inverse condemnation claim, for which governmental immunity would have been waived, and appellees' nuisance claim is subsumed within appellees' takings claim because it is dependent on the facts that form the basis for the inverse condemnation claim.

**Inverse Condemnation Claim**. The Texas Constitution provides a clear and unambiguous waiver of immunity from suit for inverse condemnation claims under article I, section 17 (Takings Clause).[2] Tex. Const. art. I, § 17(a); *City of*

---

[2] Article I, section 17(a) of the Texas Constitution provides as follows:

No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and *only if the taking, damage, or destruction is for:*

> *(1) the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:*
>
>> *(A) the State, a political subdivision of the State, or the public at large; or*
>>
>> *(B) an entity granted the power of eminent domain under law; or*
>
> *(2) the elimination of urban blight on a particular parcel of property.*

Tex. Const. art. I, § 17(a). The italicized language was added to this provision by a 2009 amendment. *Compare* Tex. Const. art. I, § 17 (2007) (amended 2009) *with* Tex. Const. art. I, § 17. Though the amended version applies to the case under review, the amendment did not change the language in effect prior to this amendment; instead, the amendment added new language. *Compare* Tex. Const. art. I, § 17 (2007) (amended 2009) *with* Tex. Const. art. I, § 17. Because we conclude that plaintiffs have not pleaded an inverse condemnation claim under the requirements of the prior language, we need not and do not address the effect, if any, of the addition of the new language on the essential elements of an inverse condemnation claim.

*Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2012). Therefore, governmental immunity does not shield the City from an action for compensation under the Takings Clause. *See* Tex. Const. art. I, § 17; *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). Generally, governmental entities compensate property owners before appropriating their property, either by paying a mutually agreed price or by paying the value as determined in a statutory condemnation proceeding. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). If, however, these entities appropriate property without paying adequate compensation, the property owner may recover the resulting damages through an inverse condemnation claim.[3] *Stewart*, 361 S.W.3d at 567; *Westgate*, 843 S.W.2d at 452. To properly assert an inverse condemnation claim against a governmental entity, a party must plead that the governmental entity intentionally performed an act in the exercise of its lawful authority that resulted in the taking, damaging, or destruction of the party's property for public use.[4] *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Steele v. City of Houston*, 603 S.W.2d 786, 790–91 (Tex. 1980). Whether alleged facts are enough to constitute an inverse condemnation is a question of law. *Gen. Servs. Comm'n*, 39 S.W.3d at 598. Appellees do not allege the City has physically taken appellees' property. Instead, appellees seem to argue that, because their northbound customers are now unable to turn west from Silber Road onto their property, the City has taken their property without just compensation.

---

[3] Condemnation proceedings are initiated by the government to acquire property. *See Stewart*, 361 S.W.3d at 567. Inverse condemnation suits are initiated by a landowner seeking adequate compensation for the property. *See id.*

[4] Physical takings occur when a governmental authority physically occupies, destroys, or damages an individual's property. *Westgate*, 843 S.W.2d at 452; *Grunwald v. City of Castle Hills*, 100 S.W.3d 350, 353 (Tex. App.—San Antonio 2002, no pet.) A taking may also occur when the government undertakes some physically non-intrusive action which may have an unconstitutional impact on real property rights. *See Westgate*, 843 S.W.2d at 452.

The Texas Supreme Court has acknowledged that "an abutting property owner does not have a vested interest in the traffic that passes in front of his property." *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex. 1993) (citing *State Highway Comm'n v. Humphreys*, 58 S.W.2d 144, 145 (Tex. Civ. App.—San Antonio 1933, writ ref'd)); *see also Dupuy v. City of Waco*, 396 S.W.2d 103, 109 (Tex. 1965) (citing same). Thus, a property owner who has reasonable access to his property after construction of a public improvement has no right to compensation. *State v. Heal*, 917 S.W.2d 6, 10 (Tex. 1996); *see also Schmidt*, 867 S.W.2d at 774-75. However, diminished value resulting from impaired access is compensable when access is materially and substantially impaired.[5] *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008) (citing *City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex. 1969)).

The "materially and substantially impaired test" acknowledges situations in which "normal access remained reasonably available, but access for which the property was specifically intended was rendered unreasonably deficient." *Heal*, 917 S.W.2d at 10; *Wilbert Family Ltd. P'ship v. Dallas Area Rapid Transit*, 371 S.W.3d 506, 510 (Tex. App.—Dallas 2012, pet. dism'd). However, access to property is not materially and substantially impaired merely because the remaining access points are less convenient. *Heal*, 917 S.W.2d at 11; *Schmidt*, 867 S.W.2d at 780; *see also City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 66-67 (Tex. 2007) ("Closing an access point and merely causing diversion of traffic or circuity of travel does not result in a compensable taking."). We determine as a matter of law whether appellees have alleged a material and

---

[5] To show material and substantial impairment, the property owner must establish (1) a total temporary restriction of access, (2) a partial permanent restriction of access, or (3) a partial temporary restriction of access due to illegal or negligent activity. *Schmidt*, 867 S.W.2d at 775 (citing *City of Austin v. Ave. Corp.*, 704 S.W.2d 11, 13 (Tex. 1986)).

substantial impairment of access. *Heal*, 917 S.W.2d at 9.

Appellees alleged in their first supplemental petition[6]:

In May of 2011, against the will of [appellees, the City] willfully and negligently commenced construction of curbed medians within Silber Road alongside [appellees'] properties, preventing and causing partial and permanent restriction of access to [appellees'] properties. Such restriction has resulted in a taking of private property for public purpose without compensation.

Appellees supplemented their petition to complain that the City violated article I, section 17 of the Texas Constitution by "intentionally tak[ing], damag[ing], or destroy[ing] a private property right for public purpose without compensation[,] . . . creating a material and substantial impairment of access to the properties." Appellees did not allege that any access points to their properties were blocked or closed as a result of the City constructing medians "within Silber Road." Nor did they allege that the road abutting their properties was closed. *See Schmidt*, 867 S.W.2d at 780 (citing *Lee v. City of Stratford*, 81 S.W.2d 1003, 1004 (Tex. Comm'n App. 1935) (noting plaintiff was not entitled to damages due to city's abandonment of streets near his property when road abutting his property was not closed and plaintiff retained direct access to road from his property, even though routes away from his property were "more circuitous and difficult"). In substance, appellees complain only of the City's construction of medians within a public roadway.

*The American Heritage Dictionary* defines "median strip" as "[t]he dividing area, either paved or landscaped, between opposing traffic on some highways." *The American Heritage Dictionary* 751 (2d coll. ed. 1991). It similarly defines "median," among other things, as "located in . . . the middle." *Id*. As alleged, the

---

[6] This petition added the Songs as plaintiffs. Subsequently filed supplemental petitions added the other appellees as plaintiffs.

"curbed medians" are "within Silber Road," and, as defined, a median is located in the middle of the road. As a matter of law, the medians could not restrict access by blocking the entrances to appellees' properties. Thus, appellees did not allege the intended access to their properties was rendered unreasonably deficient as a result of the City's construction of the medians. *See Heal*, 917 S.W.2d at 10; *see also Wilbert Family Ltd. P'ship*, 371 S.W.3d at 510. Appellees have not alleged a compensable material and substantial impairment of access to their properties. *See Heal*, 917 S.W.2d at 11. Appellees' pleadings thus affirmatively negate the trial court's jurisdiction over this issue.[7]

**Nuisance Claim**. The City also argues it retains immunity from appellees' nuisance claim because the claim is dependent on the same facts that form the basis of appellees' inverse condemnation claim. Nuisance liability against a municipality "arises only when governmental immunity is clearly and unambiguously waived." *City of Dallas v. Jennings*, 142 S.W.3d 310, 316 (Tex. 2004). "[A] city may be held liable for a nuisance that rises to the level of a constitutional taking" under article I, section 17 of the Texas Constitution.[8] *Id.* We already have concluded that appellees failed to allege facts that constitute an inverse condemnation under article I, section 17 for purposes of waiving

---

[7] Because we conclude the pleadings affirmatively negate the trial court's jurisdiction and that these defects are incurable, we do not remand for an opportunity to replead. *See Johnson*, 352 S.W.3d at 264. Likewise, we do not consider the evidence submitted by the parties because it is not necessary to do so in resolving the jurisdictional issues. *See id*.

[8] Appellees' Sixth Supplemental Petition added the nuisance claim as follows in relevant part:

[T]he City of Houston's violation of [sic] [Article I, Section 17] in that the actions of the City of Houston have intentionally taken, damaged or destroyed a private property right for public purpose without compensation. And, [appellees] supplement their previous petitions with their claim for the nuisance created by the City of Houston in removing the yellow stripes on Silber [Road], and replacing them with a curb capable of turning automobile traffic directly to Wal-Mart and away from [appellees'] businesses.

8

governmental immunity. Because appellees do not assert any other potential waiver of liability, we conclude the City is immune from appellees' nuisance claim. *See id.*; *see also City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 168 (Tex. 2004) (holding governmental immunity was not waived when plaintiff had not demonstrated a valid takings claim or alleged any applicable waiver of immunity for its nuisance claim); *City of Van Alstyne v. Young*, 146 S.W.3d 846, 851 (Tex. App.—Dallas 2004, no pet.) ("As in *Jennings*, the sole waiver of immunity asserted by the [plaintiffs] in this case is under Article I, section 17 of the Texas Constitution. . . . Because the City showed it was not liable under Article I, section 17, the City retains its immunity from the [plaintiffs'] claim for non-negligent nuisance.").

For the foregoing reasons, we sustain the City's first issue.

## II.     Standing to Seek Injunctive Relief

In its second issue, the City alleges appellees lack standing to seek injunctive relief because they have not demonstrated a particularized injury distinct from any sustained by the general public.[9] "The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'" *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Unless standing is conferred by statute, an individual must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex.

---

[9] Appellees counter that, since the trial court did not grant injunctive relief, this issue is not before us. However, standing, as a component of subject matter jurisdiction, may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993).

2007); *Concerned Cmty.*, 209 S.W.3d at 670. It is the plaintiff's burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear the case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Concerned Cmty.*, 209 S.W.3d at 670. Standing is a question of law subject to de novo review. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012); *Concerned Cmty.*, 209 S.W.3d at 670.

All enhancements, whether public or private, are rarely achieved without some inconvenience. *Concerned Cmty.*, 209 S.W.3d at 671. If public authorities could never build, repair, enhance, or alter a street or highway without consulting all "affected" property owners, permitting them to alter the design of the project, or paying all persons along such thoroughfares for the inconvenience and disruption occasioned by the construction, no public improvements would ever be made. *Id.* at 671-72. Streets and highways are primarily for the benefit of the traveling public, and only incidentally for the benefit of property owners along the way. *Id.* at 672. The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities. *Id.*; *see also Schmidt*, 867 S.W.2d at 781 ("The diversion of traffic [and] inconvenience of access . . . are, by their nature . . . shared by the entire area . . . . [Certain landowners] may be impacted more severely than some others in the area, but the difference is one of degree and not of kind.").

Here, appellees alleged that they were entitled to an injunction to prevent the City from "continued construction of curbed medians within Silber Road and alongside [appellees' p]roperties and to enjoin the City . . . to make curb cuts as prior to May 8, 2011" on the grounds that the City (1) has "no right to prevent access to [appellees' p]roperties," (2) "is depleting the assets and estate of [appellees] by preventing access to [appellees'] propert[ies]," and (3) has "shown

10

no regard whatsoever for the property rights of [appellees]." Appellees do not identify any property interest other than an alleged unconstitutional inverse condemnation of property prohibited by article I, section 17 of the Texas Constitution. *See Concerned Cmty.*, 209 S.W.3d at 672. As set forth above, appellees have failed to allege facts that constitute an inverse condemnation under article I, section 17. Therefore, appellees have failed to allege any particularized injury distinct from that suffered by the public at large. *Id.* Accordingly, we sustain the City's second issue.

The trial court's order denying the City's plea to the jurisdiction is reversed, and judgment is rendered dismissing appellees' suit for lack of jurisdiction.


/s/     Martha Hill Jamison
        Justice

Panel consists of Justices Frost, Christopher, and Jamison.

11